Docket No. 90759–Agenda 5–January 2002.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ANNE F. COX, Appellee.

 Opinion filed December 5, 2002.

JUSTICE FREEMAN delivered the opinion of the court:

Defendant, Anne F. Cox, filed a motion to suppress evidence seized by law enforcement personnel during a search of her car and her person following a traffic stop. The circuit court of Wayne County granted the motion. The appellate court affirmed. 318 Ill. App. 3d 161. We granted the State’s petition for leave to appeal (177 Ill. 2d R. 315(a)). For the reasons that follow, we affirm the judgment of the appellate court.

BACKGROUND

On July 18, 1998, at approximately 2:21 a.m., Officer Matt McCormick of the Fairfield police department stopped defendant’s vehicle because it did not have a rear registration light. At the time of the stop, Officer McCormick called Deputy Dave Zola and asked him to bring his canine, Tango, to the scene. Officer McCormick did not smell cannabis in defendant’s vehicle, nor did he have other reasons to request Deputy Zola’s assistance at the scene.

Deputy Zola arrived approximately 15 minutes later, while Officer McCormick was writing the traffic ticket. Deputy Zola walked Tango around defendant’s vehicle, and Tango alerted to the presence of drugs. The officers had defendant step out of the vehicle. Officer McCormick searched the vehicle and found “possible cannabis seeds and residue” on the floorboard. Deputy Zola then conducted a “pat down” search of defendant and found cannabis on her person. The officers arrested defendant for possession of less than 2.5 grams of a substance containing cannabis.

Defendant filed a motion to suppress evidence. Defendant argued that the officers did not have probable cause to conduct the canine sniff, and that the stop for a minor traffic violation was unnecessarily and illegally long. The trial court granted the motion, stating:

“In the instant case, the officer made a traffic stop based upon an observed traffic violation. There was no testimony from the arresting officer that Defendant had a past record, had been involved in drug related activities or that either Defendant or the interior of the vehicle smelled of marijuana or any other controlled substance. The[re] was no outstanding warrant for Defendant’s arrest. The officer did not state that the search was the result of a general plan or random pattern of canine searches during traffic stops. In short, the officer’s testimony revealed no reasonable basis which would justify the walk around. Moreover, if the walk around was invalid, then the officers had no basis for a pat down search of Defendant; she would have been released without arrest on the traffic ticket.”

On appeal, the appellate court affirmed the trial court’s suppression order. 318 Ill. App. 3d 161. The appellate court observed:

“In this case, the officer lacked reasonable suspicion sufficient to call the canine unit. At the motion-to-suppress hearing, Officer McCormick could point to no fact that aroused his suspicion. 
Terry
 and its progeny clearly establish that when an officer investigates based on reasonable suspicion, he must be able to point to articulable facts that gave rise to said suspicion.” 318 Ill. App. 3d at 167.

This court granted the State’s petition for leave to appeal.

ANALYSIS

As noted above, the circuit court granted defendant’s motion to suppress evidence recovered during the search of her vehicle and her person following the traffic stop. Generally, a motion to suppress evidence presents mixed questions of law and fact: the trial court first weighs the evidence and determines the facts surrounding the complained-of conduct, after which it decides whether, as a matter of law, these facts constitute an unconstitutional seizure. 
People v. Thomas
, 198 Ill. 2d 103, 108 (2001); 
People v. Shapiro
, 177 Ill. 2d 519, 524 (1997). A reviewing court accords great deference to the factual findings of the trial court. 
Thomas
, 198 Ill. 2d at 108. However, the reviewing court considers 
de novo
 the trial court’s ultimate determination to grant or deny the defendant’s motion to suppress. 
Thomas
, 198 Ill. 2d at 108; 
People v. Sorenson
, 196 Ill. 2d 425, 431 (2001).

The fourth amendment to the United States Constitution guarantees the “right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.” U.S. Const., amend. IV. This provision applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest. 
United States v. Brignoni-Ponce
, 422 U.S. 873, 878, 45 L. Ed. 2d 607, 614, 95 S. Ct. 2574, 2578 (1975); 
People v. Smithers
, 83 Ill. 2d 430, 433-34 (1980). Reasonableness under the fourth amendment generally requires a warrant supported by probable cause. 
People v. Flowers
, 179 Ill. 2d 257, 262 (1997); 
People v. Long
, 99 Ill. 2d 219, 227 (1983).

In 
Terry v. Ohio
, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), the United States Supreme Court recognized a limited exception to the traditional probable cause requirement. The Court held that a police officer, under appropriate circumstances, may briefly detain a person for questioning if the officer reasonably believes that the person has committed, or is about to commit, a crime. 
Terry
, 392 U.S. at 22, 20 L. Ed. 2d at 906-07, 88 S. Ct. at 1880; 
Flowers
, 179 Ill. 2d at 262; 
Smithers
, 83 Ill. 2d at 434.

The conduct constituting the stop under 
Terry
 must have been justified at its inception. 
Thomas
, 198 Ill. 2d at 109. A court objectively considers whether, based on the facts available to the police officer, the police action in detaining the defendant was appropriate. To justify the intrusion, the police officer must be able to point to specific and articulable facts which, taken together with rational inferences therefrom, reasonably warrant that intrusion. 
Terry
, 392 U.S. at 20-21, 20 L. Ed. 2d at 905-06, 88 S. Ct. at 1879-80; 
Long
, 99 Ill. 2d at 227-28. While the facts supporting the officer’s suspicions need not rise to the level of probable cause, they must be based on more than a mere hunch. 
Thomas
, 198 Ill. 2d at 110.

In addition to the requirement that the conduct constituting the stop be justified at its inception, the police officer’s action must be reasonably related in scope to the circumstances which justified the interference in the first place. 
Terry
, 392 U.S. at 19-20, 20 L. Ed. 2d at 905, 88 S. Ct. at 1879. As the Court emphasized in 
Florida v. Royer
, 460 U.S. 491, 500, 75 L. Ed. 2d 229, 238, 103 S. Ct. 1319, 1325 (1983) (plurality opinion), “an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop.” The State bears the burden of showing that a seizure based on reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure. 
Royer
, 460 U.S. at 500, 75 L. Ed. 2d at 238, 103 S. Ct. at 1326 (plurality opinion); 
People v. Brownlee
, 186 Ill. 2d 501, 519 (1999).

The standard for determining the reasonableness of a 
Terry
 investigatory stop has been codified in our Code of Criminal Procedure of 1963 (725 ILCS 5/107–14 (West 1998)). 
Thomas
, 198 Ill. 2d at 109, 
Brownlee
, 186 Ill. 2d at 518. The same standard is applied in determining the propriety of an investigatory stop under article I, section 6, of the 1970 Illinois Constitution (Ill. Const. 1970, art. I, §6). 
Thomas
, 198 Ill. 2d at 109, citing 
People v. Tisler
, 103 Ill. 2d 226, 241-45 (1984) (the protection against unreasonable searches and seizures under the Illinois Constitution is measured by the same standards as are used in defining the protections contained in the fourth amendment to the United States Constitution).

When a police officer observes a driver commit a traffic violation, the officer is justified in briefly detaining the driver to investigate the violation. 
Sorenson
, 196 Ill. 2d at 433; 
Brownlee
, 186 Ill. 2d at 517. The officer may perform some initial inquiries, check the driver’s license, and conduct a speedy warrant check. 
People v. Ortiz
, 317 Ill. App. 3d 212, 220 (2000); 
People v. Easley
, 288 Ill. App. 3d 487, 491 (1997); 
People v. Koutsakis
, 272 Ill. App. 3d 159, 163 (1995). If no further suspicion is aroused in the officer following these inquiries, the traffic stop should go no further. 
Ortiz
, 317 Ill. App. 3d at 220; 
Easley
, 288 Ill. App. 3d at 491; 
Koutsakis
, 272 Ill. App. 3d at 163. The officer should issue a warning ticket or a citation, as appropriate, and allow the driver to leave. 
Koutsakis
, 272 Ill. App. 3d at 164.

Turning to the present case, the State notes that Officer McCormick stopped defendant’s vehicle because it did not have a rear registration light. The State maintains that Officer McCormick was justified in initiating the traffic stop. The State also maintains that the dog sniff of defendant’s vehicle was proper since Deputy Zola and his dog, Tango, arrived at the scene while Officer McCormick was writing the traffic ticket.

Defendant notes that Officer McCormick called Deputy Zola to the scene at the time that Officer McCormick initiated the traffic stop. Officer McCormick did not have any reason to believe that defendant’s vehicle contained a controlled substance. According to defendant, the dog sniff was impermissible because Officer McCormick’s decision to call Deputy Zola to the scene was not based on a reasonable and articulable suspicion that defendant’s vehicle contained a controlled substance. Defendant also notes that the State failed to present evidence regarding Tango’s training and reliability. Defendant maintains only an alert by a trained dog constitutes probable cause to search a vehicle. Defendant concludes that an alert by Tango could not provide the officers with probable cause to search her vehicle.

While we agree with the State’s contention that Officer McCormick properly initiated the traffic stop, we disagree with the State’s further contention that the dog sniff of defendant’s vehicle was justified. We note that Officer McCormick did not smell marijuana in defendant’s vehicle. Officer McCormick did not have any reason to suspect that defendant’s vehicle contained a controlled substance. In sum, Officer McCormick did not have any reason to request Deputy Zola’s assistance at the scene. Rather than conducting an inquiry into the circumstances of the traffic violation, and issuing defendant a warning ticket or citation, Officer McCormick broadened the scope of the traffic stop to include a drug investigation.

The State maintains, however, that the dog sniff of defendant’s vehicle was justified because Deputy Zola arrived at the scene while Officer McCormick was writing the traffic ticket. We disagree. We note that Deputy Zola arrived at the scene approximately 15 minutes after the initial traffic stop. While we will not impose a rigid time limitation on the duration of a traffic stop, we are concerned with the duration of the traffic stop in the present case. See 
United States v. Sharpe
, 470 U.S. 675, 685, 84 L. Ed. 2d 605, 615, 105 S. Ct. 1568, 1575 (1985) (“While it is clear that ‘the brevity of the invasion of the individual’s Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion,’ 
United States v. Place, supra
, at 709, we have emphasized the need to consider the law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes”). We have examined the record and find that it is devoid of circumstances which would justify the length of the detention. Rather, the record leads us to conclude this was a routine traffic stop, which should have resulted in a correspondingly abbreviated detention. See 
People v. Luna
, 322 Ill. App. 3d 855, 859 (2001) (“An officer may not stall at the scene of a traffic stop until a drug-sniffing dog arrives and creates probable cause to conduct a search of a vehicle”); 
People v. Ruffin
, 315 Ill. App. 3d 744 (2000); 
People v. Smith
, 315 Ill. App. 3d 772 (2000); 
Koutsakis
, 272 Ill. App. 3d at 164 (“An officer’s authority to investigate a traffic violation may not become a subterfuge in order to obtain other evidence merely based on the officer’s suspicion”). Officer McCormick should have issued a traffic citation or warning ticket to defendant expeditiously. Had he done so, defendant would have left the scene of the traffic stop prior to the arrival of the canine unit.

Moreover, were we to accept the State’s contention that the dog-sniff test was permissible, we would be endorsing a drug-sniff test at every stop for a traffic violation. Again, we note that Officer McCormick called Deputy Zola to the scene when Officer McCormick first initiated the traffic stop. At that time, Officer McCormick did not have any reason to call Deputy Zola to the scene. Officer McCormick did not testify that he smelled marijuana in the vehicle. Officer McCormick did not testify that he saw any object in the vehicle that led him to suspect defendant possessed a controlled substance. Officer McCormick did not testify that defendant appeared nervous or that defendant’s answers to questions he posed aroused his suspicions. In sum, Officer McCormick did not have “specific and articulable facts which, taken together with rational inferences therefrom,” reasonably warranted an extended detention of defendant’s vehicle, and the ensuing drug-sniff test. He did not have even a hunch that defendant was engaged in criminal activity to support the call to Deputy Zola. Given these circumstances, if we held that Officer McCormick was justified in calling the canine unit, we would clearly support the view that police officers can resort to the use of canine units at every traffic stop.

We conclude that the dog-sniff test of defendant’s vehicle was impermissible. Officer McCormick did not have “specific and articulable facts” justifying the call to Deputy Zola for assistance and the subsequent dog-sniff test of defendant’s vehicle. Further, defendant’s detention, considered in light of the scope and purpose of the traffic stop, was overly long. Accordingly, we find that the circuit court properly suppressed the evidence recovered by the police.

Because of our resolution, we need not consider defendant’s argument that the alert by Tango did not give the police probable cause to search defendant’s vehicle. See 
People v. Campbell
, 67 Ill. 2d 308 (1977) (the use of trained dogs as a follow-up investigative technique to partially corroborate information received is a permissible procedure, and the ensuing alerts by the dogs, in light of the information available to police, gave the police probable cause to arrest defendants). Also, we have analyzed the issues in this case in terms of the dog-sniff test of defendant’s vehicle. We note that defendant was in the vehicle at the time the police conducted the dog-sniff test and that the police recovered the cannabis from defendant’s person, not from the vehicle. Again, because of our resolution of this cause, we need not consider whether it was appropriate for the police to conduct the dog-sniff test with defendant inside the vehicle. See 
People v. Fondia
, 317 Ill. App. 3d 966 (2000). We simply note that other considerations may factor in a search of a driver’s person as opposed to a search of the driver’s vehicle. 
Cf
. 
United States v. Di Re
, 332 U.S. 581, 92 L. Ed. 210, 68 S. Ct. 222 (1948) (search of an occupant of an automobile); 
Wyoming v. Houghton
, 526 U.S. 295, 143 L. Ed. 2d 408, 119 S. Ct. 1297 (1999) (search of an automobile passenger’s purse).

CONCLUSION

For the aforementioned reasons, the judgment of the appellate court is affirmed.

Appellate court judgment affirmed.

JUSTICE THOMAS, dissenting:

I strongly disagree with the majority’s conclusion that defendant was subjected to an illegal detention. In fact, the majority’s entire discussion of the length of the detention is inappropriate. The issue raised by the State–and the issue upon which we granted the State’s PLA–is whether a canine sniff of a lawfully detained vehicle is a “search” under the Illinois Constitution. The majority affirms the appellate court not on this basis, but on the majority’s spontaneous realization that the 15-minute traffic stop was unnecessarily and illegally long.

Although the principle is never stated in the opinion, the majority is apparently relying on the rule that a court of review can affirm on any basis supported by the record, regardless of the reasons given by the trial court. See 
People v. Buss
, 187 Ill. 2d 144, 205 (1999). My response is twofold. First, defendant has never properly pursued this theory. She did not raise the issue in her motion to suppress. The only issue raised in the motion was that the search of her vehicle was illegal because the officer had no reason to believe that defendant had drugs or weapons. Accordingly, the issue of whether defendant was subjected to an illegal detention is waived. See 
People v. Coleman
, 129 Ill. 2d 321, 340 (1989) (issues not raised in the motion to suppress are waived). The only time that the issue was mentioned was in defendant’s closing argument to the trial court on the motion to suppress. Nevertheless, the trial court specifically declined to reach the issue, and defendant did not raise the issue in either the appellate court or this court as a ground upon which the trial court’s decision could be sustained. As the appellee in the appellate court and the supreme court, defendant was entitled to raise any arguments in support of the trial court’s judgment, even if they were not directly ruled upon by the court. 
People v. Monroe
, 118 Ill. 2d 298, 300 (1987). Defendant did raise an alternative argument to support the trial court’s judgment, but did not raise the illegal-detention issue. Whether this is because the issue is waived or is meritless is not clear. However, it is possible that defendant did not raise the argument because she is aware of the second part of the 
Monroe
 rule, which holds that any points advanced in support of the trial court’s ruling must have a sufficient factual basis before the trial court. See 
Monroe
, 118 Ill. 2d at 300.

This brings me to my second point. There is no factual basis in the record upon which the majority could conclude that defendant suffered an illegal detention. Defendant has the burden of proof on a motion to suppress that alleges an illegal search or seizure. 
People v. Williams
, 164 Ill. 2d 1, 12 (1994). Defendant’s attorney did not elicit any testimony showing that defendant was unlawfully detained longer than was necessary to process a traffic ticket. The only question about the length of traffic stops came when defendant’s attorney was questioning Officer McCormick about a different traffic stop. Defendant’s motion to suppress was heard at the same time as another motion to suppress raising the same issue in a different case. The same attorney represented both defendant and the other defendant. When questioning Officer McCormick about the other traffic stop, the attorney asked him how long it normally took him to write a ticket. Officer McCormick’s response was, “it varies; on average, 10 to 12 minutes, 15 minutes.” The attorney did not ask him any further questions. The attorney did not ask why it varied, what the process involved, how long each part of the process took, or whether the officer was interrupted when writing out either of the tickets at issue. In defendant’s case, Officer McCormick testified that the canine unit arrived approximately 15 minutes after the traffic stop commenced, while he was still writing the ticket. Thus, there is simply no basis in the record to conclude that defendant was illegally detained longer than was necessary to process the ticket. Indeed, the only way to reach such a conclusion is for the majority to determine 
sua sponte
 that Officer McCormick was lying. This is apparently what the majority has done when it asserts:

“The State maintains, however, that the dog sniff of defendant’s vehicle was justified because Deputy Zola arrived at the scene while Officer McCormick was writing the traffic ticket. We disagree.” Slip op. at 5-6.

The majority never explains what leads it to conclude that Officer McCormick was not being truthful, unless it is asserting that it simply knows more than the police know about how long a traffic stop should take.

When justifying its decision, the majority subtly and improperly shifts the burden of proof to the State. The majority states that, “we have examined the record and find that it is devoid of circumstances which would justify the length of the detention.” Slip op. at 14. In other words, defendant did not have to prove that the stop was illegally and unnecessarily long. Rather, the State had to prove that the stop was sufficiently short. This is an improper reallocation of the burden of proof. The defendant had the burden to show that the detention was illegal, and she never attempted to do so.

The majority essentially draws a constitutional line in the sand at 15 minutes. If the traffic stop takes 15 minutes or more, the detention is illegal unless the State can justify the length of the detention. Interestingly, in one of the cases relied upon by the majority, 
United States v. Sharpe
, 470 U.S. 675, 84 L. Ed. 2d 605, 105 S. Ct. 1568 (1985), the United States Supreme Court refused to set the limit of a permissible traffic stop at 20 minutes:

“The Court of Appeals’ decision would effectively establish a 
per se 
rule that a 20-minute detention is too long to be justified under the 
Terry
 doctrine. Such a result is clearly and fundamentally at odds with our approach in this area.” 
Sharpe
, 470 U.S. at 686, 84 L. Ed. 2d at 615, 105 S. Ct. at 1575.

Rather, the Court concluded, the inquiry must be made case-by-case and must consider whether the police pursued their investigation in a diligent and reasonable manner. 
Sharpe
, 470 U.S. at 686-87, 84 L. Ed. 2d at 615-16, 105 S. Ct. at 1575-76. Here, the majority has pointed to no facts developed in the trial court that would lead it to conclude that Officer McCormick did not process the traffic stop in a reasonable and diligent manner. Instead, the majority bases its conclusion solely on the time–15 minutes–thus establishing an even more restrictive 
per se
 rule than the one the Supreme Court rejected in 
Sharpe
.

Finally, the majority never explains how its decision is consistent with the Supreme Court’s recent decision in 
Atwater v. City of Lago Vista
, 532 U.S. 318, 149 L. Ed. 2d 549, 121 S. Ct. 1536 (2001). In 
Atwater
, the Supreme Court held that the fourth amendment did not prohibit warrantless arrests for minor traffic violations that are punishable only by a fine. In that case, Atwater was stopped for failing to wear a seat belt and failing to secure a small child riding in the front seat. Each offense carried a penalty of a fine between $25 and $50. When the officer asked Atwater for her driver’s license and proof of insurance, she told him that she did not have them because her purse had been stolen the day before. The officer told her that he had heard that story before, handcuffed her, placed her in the squad car, and took her to the police station. Once there, the police took her mug shot, inventoried her possessions, and placed her in a jail cell for an hour before she was taken before a magistrate and released on $310 bond. 
Atwater
, 532 U.S. at 324, 149 L. Ed. 2d at 558-59, 121 S. Ct. at 1542. Texas law authorizes arrests for minor offenses such as these, although the law also provides for citations to be issued in lieu of arrests. Atwater sued the city under 42 U.S.C. §1983, alleging that the police had violated her fourth amendment right to be free from unreasonable seizures. 
Atwater
, 532 U.S. at 325, 149 L. Ed. 2d at 559, 121 S. Ct. at 1542. The district court granted summary judgment to the city, and the United States Court of Appeals for the Fifth Circuit reversed, holding that an arrest for a first-time seat belt offense was an unreasonable seizure under the fourth amendment. The United States Supreme Court granted 
certiorari
 and, in a 5-4 decision, reversed the Fifth Circuit. The Supreme Court held that, “[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.” 
Atwater
, 532 U.S. at 354, 149 L. Ed. 2d at 577, 121 S. Ct. at 1557. Atwater did not deny that she had committed the seatbelt violation, and while the arrest and booking were inconvenient to her, the process was not so extraordinary as to violate the fourth amendment. The dissent pointed out that the majority opinion would necessarily mean that, if a police officer arrests a person for a minor traffic violation, the officer would have a right to search the entire passenger compartment, including any purse or package inside, and also to impound the car and inventory all of its contents. 
Atwater
, 532 U.S. at 371-72, 149 L. Ed. 2d at 589, 121 S. Ct. at 1567 (O’Connor, J., dissenting, joined by Stevens, Ginsburg, and Breyer, JJ.).

Just as in 
Atwater
, defendant in this case committed an infraction that was punishable only by a fine. See 625 ILCS 5/12–201(c) (West 2000) (requiring rear registration light); 625 ILCS 5/16–104 (West 2000) (violations of provisions of the Vehicle Code for which no specific penalty is provided are petty offenses); 730 ILCS 5/5–1–17 (West 2000) (petty offense is punishable by a fine only). Further, just as in 
Atwater
, the police officer had statutory authority to arrest defendant. See 725 ILCS 5/107–2(1)(c) (West 2000) (police officer may arrest someone when “[h]e has reasonable grounds to believe that the person is committing or has committed an offense”); 625 ILCS 5/16–102 (West 2000) (“The State Police shall patrol the public highways and make arrests for violation of the provisions of this Act”). Thus, Officer McCormick clearly had the statutory right to arrest defendant for the traffic offense. If he would have done so, he could have searched defendant incident to the arrest and conducted an inventory search of the vehicle. This would not have violated defendant’s fourth amendment rights. 
Atwater
, 532 U.S. at 354-55, 149 L. Ed. 2d at 577, 121 S. Ct. at 1657-58.

Thus, current fourth amendment jurisprudence in Illinois is that the fourth amendment is 
not
 violated if the police conduct a full custodial arrest of a defendant for a minor traffic offense punishable only by a fine, but the fourth amendment 
is
 violated if the police take 15 minutes to write the traffic ticket. Unfortunately, the majority opinion leaves the police with no other choice but to conduct full custodial arrests of people for minor traffic violations if it appears that it will take 15 minutes to process the traffic stop. Since 15 minutes is now presumptively unreasonable if the police cannot explain why the stop took 15 minutes, a police officer who hears the majority’s fourth amendment timer ticking will have to take the person into custody if he wants to avoid having the seizure declared unlawful. Therefore, not only is the new 15-minute 
per se
 rule of dubious legality in light of 
Sharpe
, it will create more problems than it will solve.

Curiously, after affirming on the basis that defendant was unlawfully detained for 15 minutes, the majority goes on to address the canine-sniff issue. The discussion of this issue is 
dicta 
because the majority has already determined that the evidence needed to be suppressed because of an unlawful seizure
.
 Generally, this court will not “engage in speculative analysis or *** render an advisory opinion *** where, as in the instant case, such analysis or opinion is not necessary for the disposition of the cause.” 
Best v. Taylor Machine Works
, 179 Ill. 2d 367, 470 (1997). However, because there are serious flaws in this part of the majority opinion, and the majority never makes clear that its discussion is 
dicta
, I will address the issue too.

The majority opinion on the canine-sniff issue is based not on the law, but on the following nonlegal rationale: “[W]ere we to accept the State’s contention that the dog-sniff test was permissible, we would be endorsing a drug-sniff test at every stop for a traffic violation.” Slip op. at 6. This is a statement of policy, not of constitutional law. When the issue is analyzed within the proper legal and constitutional framework, the proper result is obvious.

We granted leave to appeal in this case to determine whether the appellate court erred in concluding that the Illinois Constitution requires that the police have a reasonable, articulable suspicion of criminal activity before conducting a canine sniff of a lawfully detained vehicle. The appellate court based its decision on the Illinois Constitution because it recognized that the issue was foreclosed under the fourth amendment by the United States Supreme Court’s decision in 
United States v. Place
, 462 U.S. 696, 707, 77 L. Ed. 2d 110, 121, 103 S. Ct. 2637, 2644-45 (1983). See 318 Ill. App. 3d at 165. In 
Place
, the Supreme Court held that a canine sniff is not a search within the meaning of the fourth amendment. Apparently believing that the Illinois Constitution provides greater protection in this regard, the appellate court held that the Illinois Constitution requires that the police have a reasonable articulable suspicion of criminal activity before they may conduct a canine sniff. 318 Ill. App. 3d at 165.

In affirming, the majority never states whether it agrees with the appellate court’s analysis. The majority cites some general boilerplate language on 
Terry
 stops and mentions both the United States and Illinois Constitutions. However, it never makes clear if its holding is based on either or both. In fact, the one analytical paragraph of this section of the majority opinion contains no law whatsoever. See slip op. at 6-7.

The majority’s rationale is stated in a single paragraph that is remarkable both for what it does and does not say. What it says is that the holding is driven entirely by the desired result. The only insight into the majority’s thinking is the nonlegal explanation that, “[W]ere we to accept the State’s contention that the dog-sniff test was permissible, we would be endorsing a drug-sniff test at every stop for a traffic violation.” Slip op. at 6. After stating this premise, the majority explains that the police did not have a reasonable articulable suspicion that defendant was engaging in criminal activity. What the paragraph does not say is how the majority arrived at this result. The majority concludes this lone analytical paragraph by once again explaining, “if we held that Officer McCormick was justified in calling the canine unit, we would clearly support the view that police officers can resort to the use of canine units at every traffic stop.” Slip op. at 7.

The majority fails to address the crucial threshold question of whether a canine sniff is a search. This question 
must
 be answered because if a canine sniff is not a search, then what authority would require the police to have either probable cause or a reasonable suspicion of criminal activity before conducting one? Critiquing the majority’s analysis is difficult because there is no analysis to critique. Because the majority has given no reasons for its decision, this portion of the dissent will focus on what I believe to be the proper analysis under the relevant case law. Also, I will address the defendant’s arguments and explain why the appellate court’s analysis is flawed.

First, I will briefly note what is not at issue in this case. There is no question that the detention of defendant’s vehicle was proper. The officer observed defendant committing a traffic violation, and therefore had a lawful basis to detain her. 
Pennsylvania v. Mimms
, 434 U.S. 106, 109, 54 L. Ed. 2d 331, 336, 98 S. Ct. 330, 332 (1977). What is at issue here is whether the police, during the course of a lawful traffic stop, may conduct a canine sniff of the vehicle to detect the presence of narcotics.

The important threshold question of whether a canine sniff is a search under the fourth amendment was answered by the Supreme Court in 
United States v. Place
, 462 U.S. 696, 77 L. Ed. 2d 110, 103 S. Ct. 2637 (1983).
(footnote: 1) In that case, the police seized a suspected drug courier’s luggage at an airport and transported it to another airport so that it could be subjected to a canine sniff. The luggage was detained for 90 minutes. The Court held that the detention was unreasonably long, but also held that the canine sniff was not a search under the fourth amendment:

“We have affirmed that a person possesses a privacy interest in the contents of personal luggage that is protected by the Fourth Amendment. [Citation.] A ‘canine sniff’ by a well-trained narcotics detection dog, however, does not require opening the luggage. It does not expose noncontraband items that otherwise would remain hidden from public view, as does, for example, an officer’s rummaging through the contents of the luggage. Thus, the manner in which information is obtained through this investigative technique is much less intrusive than a typical search. Moreover, the sniff discloses only the presence or absence of narcotics, a contraband item. Thus, despite the fact that the sniff tells the authorities something about the contents of the luggage, the information obtained is limited. This limited disclosure also ensures that the owner of the property is not subjected to the embarrassment and inconvenience entailed in less discriminate and more intrusive investigative methods.

In these respects, the canine sniff is 
sui generis
. We are aware of no other investigative procedure that is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure. Therefore, we conclude that the particular course of investigation that the agents intended to pursue here–exposure of respondent’s luggage, which was located in a public place, to a trained canine–did not constitute a ‘search’ within the meaning of the Fourth Amendment.” 
Place
, 462 U.S. at 707, 77 L. Ed. 2d at 120-21, 103 S. Ct. at 2644-45.

The appellate court found 
Place
 dispositive of the issue under the fourth amendment, but held that the sniff was a search under the Illinois Constitution. The court, however, did not explain why it construed our state constitution as providing greater protection in this regard.

The appellate court is correct that we are free to construe our state constitution as providing greater protection than comparable provisions in the federal constitution. 
People v. Mitchell
, 165 Ill. 2d 211, 217 (1995). Nevertheless, the appellate court ignored the analysis we have set forth for determining when we will depart from a “lockstep” construction. As we have repeatedly stated, “[w]e must find in the language of our constitution, or in the debates and the committee reports of the constitutional convention, something which will indicate that the provisions of our constitution are intended to be construed differently than are similar provisions in the Federal Constitution ***.” 
People v. Tisler
, 103 Ill. 2d 226, 245 (1984). We extensively analyzed this issue in both 
Mitchell
 and 
Tisler
 and concluded that the search and seizure provision of our state constitution was not intended to be broader than that in the fourth amendment. See 
Mitchell
, 165 Ill. 2d at 217-22; 
Tisler
, 103 Ill. 2d at 241-45.
(footnote: 2)
 Our only recent departure from a lockstep construction of our search and seizure provision was in 
People v. Krueger
, 175 Ill. 2d 60 (1996), in which we held that we would not extend the holding of 
Illinois v. Krull
, 480 U.S. 340, 94 L. Ed. 2d 364, 107 S. Ct. 1160 (1987), to our state constitution. 
Krull
 extended the good-faith exception to the exclusionary rule to searches based on statutes later declared unconstitutional. In 
Krueger
, we noted the historical importance of our state exclusionary rule and stated that it had always been understood to bar evidence gathered under the authority of an unconstitutional statute. We found that the critical flaw in 
Krull
 was that it would allow for a grace period for unconstitutional search and seizure legislation, possibly lasting for several years, during which our citizens’ constitutional rights could be violated with impunity. 
Krueger
, 175 Ill. 2d at 74-75. Accordingly, we held that such a grace period would be incompatible with our state exclusionary rule as we have always construed it. 
Krueger
, 175 Ill. 2d at 74-75.

Here, the concerns that caused us to depart from lockstep in 
Krueger
 are not present, nor has defendant or the majority explained why the 
Mitchell/Tisler
 analysis would not apply to this case. Rather, defendant argues that the Fifth District was correct in following out-of-state cases in which the courts declined to follow 
Place
 and held that canine sniffs were searches under their state constitutions. See 
State v. Pellicci
, 133 N.H. 523, 580 A.2d 710 (1990); 
People v. Dunn
, 77 N.Y.2d 19, 564 N.E.2d 1054, 563 N.Y.S.2d 388 (1990); 
Commonwealth v. Johnston
, 515 Pa. 454, 530 A.2d 74 (1987); 
Pooley v. State
, 705 P.2d 1293 (Alaska 1985). None of these courts, however, follow the same analysis that we do in determining whether to construe a provision of our constitution more broadly than its federal counterpart. In these cases, the courts chose not to apply the 
Place
 rationale to their state constitutions. However, they did not first look to the intent of the framers of their respective state constitutions. Thus, I believe that the appellate court erred in following these cases rather than the 
Mitchell/Tisler
 analysis.

In my opinion, this court should hold that a canine sniff is not a search under article I, section 6, of our state constitution. As noted, 
Place
 held that a canine sniff of lawfully detained luggage at an airport is not a search. The Supreme Court reaffirmed the 
Place
 holding in 
United States v. Jacobsen
, 466 U.S. 109, 122-24, 80 L. Ed. 2d 85, 100-01, 104 S. Ct. 1652, 1661-62 (1984), and broadly construed it as providing that police investigatory methods that only disclose the presence or absence of contraband do not implicate the fourth amendment. Prior to 
Place
, this court had already held that a canine sniff of baggage at an airport did not implicate the fourth amendment because people cannot have a justifiable expectation of privacy in the smell of contraband in a container exposed to the public. 
People v. Campbell
, 67 Ill. 2d 308, 316 (1977).
(footnote: 3)
 Recently, the United States Supreme Court has specifically stated that a canine sniff of a vehicle is a not a search. In 
City of Indianapolis v. Edmond
, 531 U.S. 32, 148 L. Ed. 2d 333, 121 S. Ct. 447 (2000), the Supreme Court held invalid a checkpoint procedure that had as its primary purpose the detection of narcotics. The Supreme Court held that the detentions violated the fourth amendment because their primary purpose was to uncover evidence of ordinary criminal wrongdoing. 
City of Indianapolis
, 531 U.S. at 48, 148 L. Ed. 2d at 347-48, 125 S. Ct. at 458. Importantly, however, the Court specifically held that the use of canines to sniff the vehicles at the checkpoints did not turn the unlawful seizures into unlawful searches:

“It is well established that a vehicle stop at a highway checkpoint effectuates a seizure within the meaning of the Fourth Amendment. [Citation.] The fact that officers walk a narcotics-detection dog around the exterior of each car at the Indianapolis checkpoints does not transform the seizure into a search. [Citation.] Just as in 
Place
, an exterior sniff of an automobile does not require entry into the car and is not designed to disclose any information other than the presence or absence of narcotics. [Citation.] Like the dog sniff in 
Place
, a sniff by a dog that simply walks around a car is ’much less intrusive than a typical search.’ [Citations.] Rather, what principally distinguishes these checkpoints from those we have previously approved is their primary purpose.” 
City of Indianapolis
, 531 U.S. at 40, 148 L. Ed. 2d at 342-43, 125 S. Ct. at 453.

Additionally, several lower federal courts have considered whether canine sniffs of lawfully detained vehicles are searches and have concluded that 
Place
 applied. For instance, in 
United States v. Morales-Zamora
, 914 F.2d 200 (10th Cir. 1990), the court held that canine sniffs of vehicles lawfully detained at a roadblock were not searches. In that case, the sniff was of the exterior of a vehicle that was lawfully detained on a public highway. The court first noted that there is a lesser expectation of privacy in a vehicle than in a home or one’s bodily integrity. See 
United States v. Martinez-Fuerte
, 428 U.S. 543, 561, 49 L. Ed. 2d 1116, 1130, 96 S. Ct. 3074, 3084 (1976). The court then explained that, when the odor of narcotics escapes from a vehicle, society does not recognize a reasonable privacy interest in the airspace containing the incriminating odor. 
Morales-Zamora
, 914 F.2d at 205. See also, 
e.g
., 
United States v. $404,905.00 in U.S. Currency
, 182 F.3d 643, 647 (8th Cir. 1999) (canine sniff of U-Haul stopped for speeding not a search); 
United States v. Glinton
, 154 F.3d 1245, 1257 (11th Cir. 1998) (canine sniff of lawfully detained vehicle not a search); 
United States v. Seals
, 987 F.2d 1102, 1106 (5th Cir. 1993) (canine sniff of lawfully detained vehicle not a search; thus, individualized suspicion of drug-related activity not required).

For the same reasons that these courts have rejected the argument that a canine sniff of a lawfully detained vehicle is not a search under the fourth amendment, this court should reject defendant’s argument that the canine sniff of her vehicle violated article I, section 6, of our state constitution. A search occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. 
Jacobsen
, 466 U.S. at 113, 80 L. Ed. 2d at 94, 104 S. Ct. at 1656. A person cannot have a justifiable expectation of privacy in the odors emanating from his car on a public highway (
Morales-Zamora
, 914 F.2d at 205), and the desire to conceal the odor of contraband is not a protectable expectation of privacy (
Campbell
, 67 Ill. 2d at 316). Because a canine sniff is not a search, we should reject the appellate court’s conclusion that the police need a reasonable suspicion of criminal activity before they may conduct a canine sniff of a lawfully detained vehicle. Instead, the majority affirms the appellate court decision without giving a single defensible 
legal
 rationale for its decision.

Defendant argues that the Supreme Court’s recent decision in 
Kyllo v. United States
, 533 U.S. 27, 150 L. Ed. 2d 94, 121 S. Ct. 2038 (2001), mandates an affirmance in this case. I disagree. In 
Kyllo
, agents of the federal government believed that the defendant was growing marijuana in his home. Indoor marijuana growth requires the use of high-intensity heat lamps. The agents used a thermal imaging device to scan the defendant’s home to determine the amount of heat in different parts of the house. The device detects infrared radiation emitted from the house. The agents studied the scan and noted that the roof over defendant’s garage was noticeably warmer than the rest of the house. The agents acquired a search warrant and discovered a marijuana-growing operation involving more than 100 plants. 
Kyllo
, 533 U.S. at 29-30, 150 L. Ed. 2d at 99-100, 121 S. Ct. at 2041.

The Supreme Court held that the use of the thermal imaging device was a search under the fourth amendment and was thus presumptively unreasonable without a warrant. 
Kyllo
, 533 U.S. at 40, 150 L. Ed. 2d at 106, 121 S. Ct. at 2046. 
Kyllo
 is distinguishable, however, because the Court’s concern was in the use of advanced technology to reveal the intimate details of a private home. The Court held that in the home “
all
 details are intimate details, because the entire area is held safe from prying government eyes.” (Emphasis in original.)
 Kyllo
, 533 U.S. at 37, 150 L. Ed. 2d at 104, 121 S. Ct. at 2045. Additionally, the Court began its analysis by stating that, “ ‘At the very core’ of the Fourth Amendment ‘stands the right of a man to retreat into his own home and there be free from unreasonable government intrusion.’ ” 
(Kyllo
, 533 U.S. at 31, 150 L. Ed. 2d at 100, 121 S. Ct. at 2041-42, quoting 
Silverman v. United States
, 365 U.S. 505, 511, 5 L. Ed. 2d 734, 739, 81 S. Ct. 679, 683 (1961)), and concluded it by stating that the fourth amendment “draws ‘a firm line at the entrance to the house’ ” (
Kyllo
, 533 U.S. at 40, 150 L. Ed. 2d at 106, 121 S. Ct. at 2046, quoting 
Payton v. New York
, 445 U.S. 573, 590, 63 L. Ed. 2d 639, 653, 100 S. Ct. 1371, 1382 (1980)).

Thus, the Supreme Court’s decision in 
Kyllo
 was based on the heightened expectation of privacy one has in one’s home. As I have already noted, a person has a lesser expectation of privacy in a vehicle than in a home or one’s bodily integrity. 
Martinez-Fuerte
, 428 U.S. at 561, 49 L. Ed. 2d at 1130, 96 S. Ct. at 3084. Further, the Supreme Court views the thermal imaging device as something that reveals the intimate details of a home (
Kyllo
, 533 U.S. at 37-38, 150 L. Ed. 2d at 104, 121 S. Ct. at 2045), but a canine sniff as something that reveals only the presence or absence of contraband (
Place
, 462 U.S. at 707, 77 L. Ed. 2d at 121, 103 S. Ct. at 2644). Thus, I disagree with defendant’s assertion that 
Kyllo
 mandates an affirmance in this case.

I also disagree with the appellate court’s holding (and the majority’s apparent implied holding) that canine sniffs should be considered limited investigatory stops governed by 
Terry v. Ohio
, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). 
Terry
 allows the police to briefly detain an individual when the officer “observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot.” 
Terry
, 392 U.S. at 30, 20 L. Ed. 2d at 911, 88 S. Ct. at 1884. Additionally, the officer is allowed, without a warrant, to conduct a careful limited search of the person when his observations reasonably lead him to believe that the person might be carrying a weapon. The purpose of the “frisk” is to allow the police, for their own safety and the safety of others, to determine if the person is 
armed
. 
Terry
, 392 U.S. at 27, 20 L. Ed. 2d at 909, 88 S. Ct. at 1883. The Court reached its decision by balancing the need to search against the invasion the search entails. 
Terry
, 392 U.S. at 21, 20 L. Ed. 2d at 905-06, 88 S. Ct. at 1879-80, quoting 
Camara v. Municipal Court
, 387 U.S. 523, 536-37, 18 L. Ed. 2d 930, 940, 87 S. Ct. 1727, 1735 (1967). As Professor LaFave has noted, however, “there is no search-for-evidence counterpart to the 
Terry
 weapons search, permissible on only a reasonable suspicion that such evidence would be found.” 4 W. LaFave, 
Search & Seizure
 §9.5(g), at 300 (3d ed. 1996). See also 
Minnesota v. Dickerson
, 508 U.S. 366, 373, 124 L. Ed. 2d 334, 344, 113 S. Ct. 2130, 2136 (1993) (sole justification for a 
Terry
 frisk is the protection of the police officer and others, not to gather evidence); 
People v. Flowers
, 179 Ill. 2d 257, 263 (1997) (same); 
Arizona v. Hicks
, 480 U.S. 321, 328-29, 94 L. Ed. 2d 347, 356, 107 S. Ct. 1149, 1154 (1987) (refusing to recognize an intermediate type of search between a plain-view inspection and a “full-blown search” that would merely require a reasonable suspicion); 
Ybarra v. Illinois
, 444 U.S. 85, 93-94, 62 L. Ed. 2d 238, 247, 100 S. Ct. 338, 343 (1979) (
Terry
 cannot be understood to allow any search whatever for anything but weapons); 
Skinner v. Railway Labor Executives’ Ass’n
, 489 U.S. 602, 619, 103 L. Ed. 2d 639, 661, 109 S. Ct. 1402, 1414 (1989) (balancing test is appropriate only when warranted by special needs beyond the normal need for law enforcement). Thus, the majority’s apparent belief that a canine sniff for narcotics is a search that can be conducted on an officer’s mere reasonable suspicion impermissibly extends 
Terry
 to general searches for evidence. Accordingly, because the Supreme Court requires 
probable cause
 for warrantless searches of vehicles (see, 
e.g.
, 
Wyoming v. Houghton
, 526 U.S. 295, 300, 143 L. Ed. 2d 408, 414-15, 119 S. Ct. 1297, 1300 (1999)), the majority has unwittingly construed the search and seizure provision of our state constitution as providing 
less
 protection than its federal counterpart. The majority’s opinion is thus wholly invalid and subject to reversal by the United States Supreme Court.

In sum, the answer to the question of whether a canine sniff is a search leads to two possible outcomes. If a sniff is a search, then the police need probable cause to conduct one. If a sniff is not a search, then neither the fourth amendment nor article I, section 6, of the Illinois Constitution is implicated. There simply cannot be a “reasonable suspicion” middle ground because the United States Supreme Court has not expanded 
Terry
 to general searches for incriminating evidence, as opposed to searches for weapons.

The majority thus refuses to answer the threshold question, because an answer cannot lead to its result. Instead, the majority has issued a policy decision with no foundation in the law. The majority bases its opinion solely on its desire not to see canine sniffs allowed at every lawful traffic stop. Such an analysis begs the question of whether either the United States or Illinois Constitution forbids canine sniffs of lawfully detained vehicles. Because the United States Supreme Court has held that a canine sniff is not a search, and we have construed the search and seizure provision of our state constitution in lockstep with its federal counterpart, I am unable to see how either constitution would forbid a canine sniff of a lawfully detained vehicle. Unfortunately, the explanation is nowhere to be found in the majority opinion.

JUSTICES FITZGERALD and GARMAN join in this dissent.

FOOTNOTES
1:     
1
This case is notably absent from the majority opinion.

2:     
2
The majority recognizes this very principle when it cites 
Tisler
 and explains that “the protection against unreasonable searches and seizures under the Illinois Constitution is measured by the same standards as are used in defining the protections contained in the fourth amendment to the United States Constitution.” Slip op. at 4. This principle is forgotten as soon as it is cited.

3:     
3
Like 
Place
, this decision is conspicuously absent from the majority opinion.