**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued June 14, 2005
Decided July 11, 2005

**Before**

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 04-3922

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　*Plaintiff-Appellee*, | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. |
| *v.* | No. 1:03CR00062-001 |
| JEFFREY GARRETT,<br>　　　*Defendant-Appellant*. | Sarah Evans Barker,<br>*Judge*. |

**ORDER**

Jeffrey Garrett appeals the district court's denial of his pretrial motion to suppress drugs, a gun, and certain statements that he contends are the fruits of an unlawful detention.  He argues that police officers unlawfully detained him during a traffic stop so that they could call in a drug-detection dog to sniff his car.  Garrett also argues that even if he was not illegally detained for the dog sniff, the dog's positive alert did not provide the officers with probable cause to search his car.  We disagree on both counts and affirm his conviction.

From November 2002 until March 2003, Detective Clifton Jones of the Indianapolis Police Department investigated Garrett for dealing crack.  Jones conducted surveillance of Garrett, and he testified during the suppression hearing that he had a confidential informant purchase crack from Garrett on four different occasions between November 2002 and January 2003.  Although Detective Jones believed he had probable cause to arrest Garrett based on his investigation, he did not obtain an arrest warrant and he delayed making the arrest until the end of March.  Although it is not clear why Jones never obtained an arrest warrant, he did explain at the suppression hearing why he waited two months before making the

arrest. He said that the delay helped to protect the integrity of the investigation and the identity of the confidential informant. Detective Jones preferred to use a traffic stop so that observers would not realize that Garrett's encounter with the police had anything to do with an ongoing drug investigation.

On March 26 Detective Jones was ready to make the arrest, so he instructed Detective Wilkerson and Sergeant McDonald to detain Garrett with a pretextual traffic stop. Detective Jones told the other officers that Garrett had been involved in four drug sales to a confidential informant, that he had a serious criminal history and violent tendencies, that he was likely to be armed, and that he would be driving a 1992 green Mercury Cougar with a hidden compartment. Sergeant McDonald observed Garrett driving 35 mph in a 25-mph school zone and pulled him over. Detective Wilkerson arrived on the scene "almost immediately" to provide back-up.

Garrett and a passenger were ordered out of the car and asked several questions. Garrett initially gave consent to search his car but then withdrew it. At some point in the stop after Garrett withdrew his consent, Detective Wilkerson called for Officer Matthew Mielke and Cade, his drug detection dog. It is not clear how long into the stop they were called, but they arrived within minutes of the call. Cade was walked around the vehicle and the dog alerted to the presence of narcotics at the front passenger side of the vehicle. There is no information in the record about how long the traffic stop had lasted by the time Cade alerted. The district court did find, however, that "the traffic violation ticketing process . . . took twenty (20) minutes from start to finish." At some point the police gave Garrett a written warning for speeding. Following the positive dog alert, Detective Wilkerson searched inside Garrett's car and found a hidden compartment containing 270 grams of crack, a small amount of marijuana, and a loaded revolver.

Detective Jones arrived on the scene, administered *Miranda* warnings to Garrett and the passenger, and asked them if they wanted to speak. They did not, so both were taken to the police station. At the station Garrett changed his mind and spoke with Detective Jones. He admitted responsibility for the drugs and gun.

Garrett moved to suppress the drugs, gun, and his statements on the theory that this traffic stop was initially a valid *Terry* stop but that the officers exceeded the permissible scope of a *Terry* stop when they kept him long enough allow the dog to sniff the car. He also argued at the hearing that the dog sniff did not provide the officers with probable cause to search the car because the government never proved that Cade was reliable.

The district court refused to suppress the evidence. The court credited Sergeant McDonald's testimony that he had observed Garrett speeding by following him and keeping pace with his car. The court further concluded that, because it took only two minutes for Officer Mielke and Cade to arrive on the scene after they were called, Garrett was not unreasonably detained awaiting the dog sniff. Finally, the court concluded that because Officer Mielke testified that Cade was enlisted "to perform a task well within the scope of his training and capabilities" and that the

dog had received a 100% score on a recent proficiency test, Cade's alert provided the officers with probable cause to believe that drugs were present in the car. The court denied Garrett's motion to suppress. After a jury trial, Garrett was convicted of two counts of possession with intent to distribute 50 grams or more of crack. *See* 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii).

On appeal Garrett first argues that the police extended the traffic stop longer than necessary to write him a warning ticket and that the unnecessary detention amounted to an illegal arrest. He contends that Sergeant McDonald delayed in writing him the warning so that Officer Mielke and Cade would have time to arrive and check the car for drugs.

The Supreme Court recently clarified the standard for assessing the constitutionality of traffic stops involving dog sniffs. *See Illinois v. Caballes*, 125 S. Ct. 834 (2005). In *Caballes* police officers stopped a suspect based on probable cause to believe that he was speeding. *Id.* at 836-37. The defendant was detained for 10 minutes while one officer wrote him a warning citation and another walked a drug sniffing dog around the car. *Id.* at 836. In analyzing whether the defendant was illegally detained during the encounter, the Court announced the rule that: "A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Caballes*, 125 S. Ct. at 837. Accepting the state court's conclusion that the "duration of the traffic stop . . . was entirely justified by the traffic offense and the ordinary inquiries incident to such a stop," the Court concluded that no illegal seizure occurred.

Garrett distinguishes his detention from the one in *Caballes*, arguing that the length of his detention was not justified by the traffic offense and the ordinary inquiries that are part of traffic stops. The government argues that the length of Garrett's detention was a reasonable amount of time for the police to respond to his speeding offense. We disagree with the parties that the current record allows us to answer the question of whether the length of Garrett's detention was justified by the traffic offense. We also disagree that *Caballes* provides the proper framework for analyzing this traffic stop.

The current record does not even permit us to decide whether, in order to wait for the drug dog to arrive, the police officers delayed the traffic stop longer than necessary to address Garrett's traffic offense. Although the record reveals that the entire "traffic violation ticketing process" took 20 minutes and that the drug dog arrived within minutes of being called, neither party has provided any information about how long into the stop the dog alerted. As soon as a dog alerts during a traffic stop and provides the officers with probable cause to believe that a car contains drugs, the officers have a new justification to extend a traffic stop. *See Berkemer v. McCarty*, 468 U.S. 420, 439-40 (1984) (stop can be extended if detainee's answers to question provide probable cause to arrest him); *Florida v. Royer*, 460 U.S. 491, 506 (1983) (positive dog alert would justify turning investigative detention into arrest). The part of the traffic stop that matters for the *Caballes* inquiry is the time leading

up to the dog alert, and that detail was not discussed by any witness at the suppression hearing. Contrary to the district court's suggestion, it does not matter how quickly a dog arrives after being called because a suspect might already be illegally detained by the time of the call. In this case, if Cade alerted within 5 or 10 minutes of Garrett being pulled over, that would likely be a reasonable amount of time for McDonald to still be responding to the traffic violation. But if the alert happened 19 minutes into the stop, perhaps not. *See People v. Cox*, 782 N.E.2d 275, 279-80 (Ill. 2002) (cited with approval in *Caballes*, 125 S. Ct. at 837, and holding that 15-minute stop to issue ticket or citation for missing rear registration light was an unreasonably long detention). Further factual findings would be necessary on the issues of when Cade alerted, what Sergeant McDonald was doing until then, and whether he artificially or unreasonable extended the duration of the detention. But that inquiry is unnecessary to decide this appeal because we do not think that *Caballes* even provides the proper framework for analyzing the facts of this case.

This case is different from *Caballes* because that case involved a traffic stop "justified solely by the interest in issuing a warning ticket" to a driver for a traffic violation, *Caballes*, 125 S. Ct. at 837, while this case involves an admittedly pretextual traffic stop. The officers here were not primarily interested in apprehending Garrett for a traffic offense; they wanted to arrest him for his previous drug sales. There is no reason to conclude, then, that the duration of Garrett's detention before the dog alert had to be strictly limited to the time necessary to issue a written warning. After the warning citation was written, the officers still had another justification for detaining Garrett. Based on the four controlled buys, the police officers had probable cause to believe that he committed several felonies, and they wanted to arrest him for those felonies. Had the officers apprehended Garrett while he was walking down the street, he would not be claiming that he was illegally detained. Neither would the detention be vulnerable to challenge if the officers had simply obtained a warrant before conducting the stop. The fact that the officers chose to arrest Garrett by way of a traffic stop has turned out to be a red herring in the case, so *Caballes* does not provide the most relevant legal doctrine for analyzing this encounter.

The more relevant legal rule is that the Fourth Amendment permits warrantless public arrests based upon probable cause. *See Maryland v. Pringle*, 540 U.S. 366, 370 (2003); *United States v. Watson*, 423 U.S. 411, 423-24 (1976). Garrett admits that the officers had probable cause to arrest him based on the previous controlled drug buys. He argues, however, that they did not arrest him for those drug sales so they were thus limited to the confines of a traffic stop. He relies on *Knowles v. Iowa*, 525 U.S. 113 (1998), for the proposition that the officers' conduct must be evaluated in terms of what they did do, not what they could have done. But the officers testified that they *did* intend to detain Garrett based on his previous drug sales. This is not a case where an officer happened to pull Garrett over for speeding and was unaware that other officers had probable cause to arrest him for a different offense. Sergeant McDonald knew about the drug sales and testified that he pulled Garrett over to help Detective Jones apprehend Garrett for those sales. Garrett's premise that the officers did not actually detain him for the

drug sales is at odds with the record.  Because the police had probable cause to arrest Garrett for felony offenses, they were justified in making this public warrantless arrest of him.

Garrett also argues on appeal that the search of his car was unlawful because the dog alert did not provide the officers with probable cause to believe that drugs were present in his vehicle.  The government relies on the automobile exception from *Carroll v. United States*, 267 U.S. 132, 153-56 (1925), as one possible justification for the search of Garrett's car.  That exception allows a warrantless search of a car when officers have probable cause to believe the car contains contraband or evidence of a crime.  *Id.*  Garrett contends that the dog alert in this case did not provide probable cause because there was no evidence that the dog was reliable.  He admits that the government submitted evidence that Officer Mielke and Cade received a 100-percent score for finding all of the hidden drugs during a February 2003 recertification examination, but he argues that the government never offered evidence on whether Cade gave any false positive alerts during the test.  The recertification report is in the record and it clearly indicates that Cade gave no false positive alerts in obtaining his 100-percent score.  Garrett's argument is squarely rebutted by the report.  Cade's certification in a training school and 100-percent accuracy in a recent proficiency examination supports the district court's conclusion that Cade's alert was reliable.  *See United States v. Limares*, 269 F.3d 794, 797-98 (7th Cir. 2001) (a dog alert from a dog that is somewhere between 62 and 93 percent accurate is enough to provide probable cause).

For the foregoing reasons, we AFFIRM the judgment of the district court.