GREGORY, Circuit Judge,
dissenting:
Because in my view the record does not support the Majority’s conclusion that the *344 police did not unreasonably prolong the detention of the defendant, I must respectfully dissent.
At approximately 6:50 p.m., Officer Timothy White pulled over the defendant for running a red light. Less than 75 seconds later, with only basic information about the defendant, Officer White requested a drug dog. Officer White only knew that: (1) the defendant lived in the Freetown community, and (2) he had been pulled over in Freetown driving the same white Mercedes Benz for an investigative stop nine days earlier when Officer White had served as a backup. After hearing that a drug dog was not available, another officer told Officer White the defendant was a well-known drug dealer and that the defendant “knows the law ... so getting in the car is going to be difficult.” (J.A. 381.) Officer White then said “10-4, I’m gonna see if we can find a dog. Maybe MDTA [Maryland Transportation Authority] has one if we don’t, and if they can get here in a reasonable amount of time, we’ll uh, wait on that.” (J.A. 381.) At 6:55 p.m., Officer White contacted the MDTA and spoke with Officer Vincent Edwards about the availability of his drug dog. (J.A. 163.) Officer Edwards confirmed that he was available and proceeded to the location of the traffic stop.
While Officer White waited for Officer Edwards to arrive, approximately six minutes after stopping the defendant for a routine traffic violation, he finally called in the defendant’s information. At 6:58 p.m., Officer White learned that the defendant’s license was valid and there was no warrant for his arrest. Seven minutes had passed and Officer White had still not issued a citation to the defendant. At 7:00 p.m., the MDTA told Officer White that the vehicle’s registration was not on file. (J.A. 321.) This was the second time the defendant had been pulled over and the MDTA did not have the vehicle’s registration on file although the vehicle was registered. Officer White asked the defendant for the contact information for the registered owner of the vehicle. Officer White testified that the defendant told him that the owner was out of the country on her honeymoon and that Officer White would be unable to reach her. (J.A. 94-95.) At 7:12 p.m., Officer White radioed the dispatcher to locate a telephone number for the registered owner. Once contacted the registered owner confirmed that the defendant was permitted to drive her vehicle. At 7:17 p.m., Officer Edwards arrived and spoke to Officer White. Afterwards Officer White finally began to finish writing the citation then at 7:20 p.m. more than thirty minutes after Officer White had pulled the defendant over and just as Officer White was about to give the citation to the defendant, Officer Edwards’s dog walked around the front passenger area of the defendant’s vehicle and alerted.
The Supreme Court found in Illinois v. Caballes, 543 U.S. 405, 407-408, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005), that “... a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution.” Using the example[1] of an officer issuing a warning ticket, the Court went on to declare that “a seizure that is justified solely by the interest in issuing a warning ticket *345 to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission.” Id. The Court then declared that a dog sniff that occurred during an unreasonably prolonged traffic stop and after which contraband was discovered, would be the product of an unconstitutional seizure and therefore illegal. Id.
A police officer who detains a driver beyond the time necessary to complete his routine traffic stop must have a justification for doing so other than the initial traffic violation. See Florida v. Royer, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Consequently, a prolonged traffic stop requires either the driver’s consent or a reasonable articulable suspicion that illegal activity is afoot. See United States v. Foreman, 369 F.3d 776, 781 (4th Cir.2004); see also Royer, 460 U.S. at 500-01, 103 S.Ct. 1319. Under this standard, it is clear that Officer White’s prolonged detention of the defendant was not justified by reasonable articulable suspicion.
The Majority’s decision to affirm the district court hinges on two main points. I strongly disagree with both. First, they argue that the prolonged detention was the direct result of the defendant providing misinformation about the location of the registered owner. (Maj. Op. 338.) I am unpersuaded by this argument because Officer White never believed the defendant’s claim that the owner was out of the country on her honeymoon and thus Officer White immediately contacted the dispatcher to get the owner’s contact information. Furthermore, it only took a few minutes for Officer White to radio the dispatcher, receive a contact number, talk to the owner’s mother, and then make contact with the owner. This hardly justifies an over thirty-minute detention.
Second, the Majority maintains that Officer White “possessed additional justification for detaining the defendant in the form of a ‘reasonable articulable suspicion of narcotics activity.’” (Maj. Op. 338.) However, each of the factors relied upon when analyzed, individually or as a whole, either is insufficiently established or did not provide reasonable articulable suspicion. First, the Majority states that “as White first stopped Branch’s Mercedes he remembered that the vehicle had been pulled over less than a month ago in an area known to be an ‘open air drug market.’ ” (Maj. Op. 338.) I am troubled about the Majority’s use of this information because the vehicle had been pulled over once before for an investigative stop and there was nothing that linked this vehicle to illegal drug activity. There was a problem with the registration then as is the case now and similarly no one could explain what was wrong with the registration given that the car was properly registered.
Furthermore, there are many people who visit and/or reside in communities that are considered to have a “propensity toward criminal activity”; merely having been pulled over once before for an investigative stop is not sufficient to establish a connection to illegal drug activity. It is important to point out that this routine traffic stop did not occur in an area with a propensity toward criminal activity. In fact this incident happened in a relatively affluent neighborhood, thus our case law that says that “an area’s propensity toward criminal activity is something that an officer may consider” is not germane to this incident. United States v. Lender, 985 F.2d 151, 154 (4th Cir.1993).
In addition, the Majority uses Officer White’s observation that there were several air fresheners in the vehicle as a factor for determining reasonable articulable suspicion. Although our case law holds the *346 existence of air fresheners may be considered a factor in establishing reasonable articulable suspicion if combined with other factors, I do not find that there is sufficient evidence here to establish that there were in fact air fresheners in the vehicle. When cross-examined Officer White could not state how many air fresheners were present although he testified earlier that there was one hanging from the rearview mirror. (J.A. 86, 117.) Further, the conflicting testimony from the defendant and Officer Edwards that there were no air fresheners in the vehicle at the very least calls into question whether there were in fact air fresheners. Officer Edwards also admitted that his dog had falsely alerted to the presence of drugs in the field and a half a dozen times in training because of air fresheners. (J.A. 165-166.) Officer Edwards did not recall seeing any air fresheners or smelling any particular odor when he approached the passenger side of the vehicle, which had its window down. (J.A. 166.) In fact, given the dog’s propensity to falsely alert in the presence of air fresheners, the dog’s handler would be expected to pay special attention to air fresheners’ potential presence as distrac-tors. It is highly persuasive that Officer Edwards did not notice any air fresheners in the car nor a particular odor of air fresheners. This is after Officer White testified that when he was standing near the vehicle the odor was so strong “to the point it was almost unbearable to stand there and breathe it.” (J.A. 86.) Officer Edwards’s testimony clearly contradicted that of Officer White. In sum, there is insufficient evidence to establish the presence of air fresheners and at the very least there was evidence that called into question Officer White’s wavering testimony in this regard.[2]
Finally, the Majority contends that the fact that the car was not registered to the defendant and the defendant “offered ‘no proof of authority to operate the vehicle’ ” was an additional factor. However, this as a factor was clearly nullified by Officer White who talked to the registered owner and was told the defendant was authorized to drive her vehicle.
With those factors clearly discounted, only two factors that the Majority cites for support of reasonable suspicion remain: (1) the defendant’s reputation as a drug dealer and (2) his nervousness and the alleged reluctance to make eye contact with the officer. Neither of these factors individually nor collectively is sufficient to establish reasonable articulable suspicion. As we held in United States v. Sprinkle, 106 F.3d 613, 618 (4th Cir.1997), “a prior criminal record is not, standing alone, sufficient to create reasonable suspicion. Nevertheless, an officer can couple knowledge of prior criminal involvement with more concrete factors in reaching a reasonable suspicion of current criminal activity.” However, Officer White’s testimony that the defendant seemed nervous and did not make eye contact with him do not amount to concrete factors that would create reasonable suspicion. Most people when they are pulled over by the police are nervous. Absent excessive signs of nervousness, this factor does not support Officer White’s suspicion that the occupants were engaged in criminal activity. Furthermore, Officer White had never had direct contact with the defendant and, therefore, could not compare the defendant’s behavior to prior experiences. Given that most people are nervous when pulled over by police officers, Officer White’s observation that the defendant seemed nervous in conjunction with the defendant’s reputation as a drug dealer *347 does not in my opinion rise to the level of reasonable articulable suspicion that would justify a thirty minute detention during a routine traffic incident. For these reasons, I would reverse the district court’s denial of the motion to suppress.

. The example was based on the facts in People v. Cox, 202 Ill.2d 462, 270 Ill.Dec. 81, 782 N.E.2d 275 (2002) where a defendant had been stopped for speeding, and without reasonable articulable suspicion to detain, the police officer radioed for a drug dog which took fifteen minutes to arrive on the scene. The Illinois Supreme Court found, and the Supreme Court agreed here, that the fifteen minutes was unreasonably long for a routine traffic citation. Caballes, 543 U.S. at 407-408, 125 S.Ct. 834.

. Additionally, no photograph of the air fresheners were ever produced.