ALLSTATE INSURANCE COMPANY, PLAINTIFF v. BOWERS ROBINSON AND WIFE, KATHERINE ROBINSON AND TIMOTHY CHARLES ROBINSON; REVA M. SHOWALTER AND AIRWAY FOAM INDUSTRIES, INC., AND STASSA FERIKES; AND LIBERTY MUTUAL INSURANCE COMPANY, DEFENDANTS

No. 9028SC1227

(Filed 20 August 1991)

**Insurance § 121 (NCI3d) — fire insurance — actions leading to fire arising out of business pursuit — summary judgment improper**

In a declaratory judgment action to determine whether a homeowners policy issued by plaintiff to defendants covered a fire started by their son which destroyed a building which appellant owned and was using in his foam rubber business, the trial court erred in holding by summary judgment that the policy did not cover the fire involved on the ground that the actions which led to the fire arose out of a business pursuit, since the conflicts and contradictions concerning the son's activities and purpose in striking the matches which caused the building and its contents to be destroyed raised an issue of fact which was material.

**Am Jur 2d, Insurance § 478.**

APPEAL by defendants from judgment entered 23 August 1990 by *Judge C. Walter Allen* in BUNCOMBE County Superior Court. Heard in the Court of Appeals 5 June 1991.

**ALLSTATE INS. CO. v. ROBINSON**

[103 N.C. App. 794 (1991)]

*Roberts Stevens & Cogburn, P.A., by Frank P. Graham, for plaintiff appellee.*

*Joseph A. Ferikes for defendant appellants.*

PHILLIPS, Judge.

This declaratory judgment action was brought to determine whether a homeowners policy plaintiff issued to defendants Bowers Robinson and wife covered a fire started by their son, Timothy Charles Robinson, which destroyed a building that appellant Showalter owned and Airway Foam Industries, Inc. was using in its foam rubber business. Following discovery and a hearing the trial court by summary judgment held that the policy does not cover the fire involved.

The materials of record clearly establish that Timothy Charles Robinson was an insured under the terms of the policy, and the only genuine question raised by the appeal is whether the policy also covered his activities in starting the fire. Plaintiff being of the view, apparently, that no point in a lawsuit should go unargued, argues that whether Timothy Robinson was an insured is still an open question and must be resolved by us. In so arguing plaintiff ignores the fact that its own materials answered that question in the affirmative when the action was filed. For plaintiff's policy in pertinent part defines "insured" as meaning "you and residents of your household who are . . . your relatives," and its complaint states that the policyholders are Timothy Robinson's parents and that he was living in their household at the time of the fire and had been for two months. Plaintiff does not argue that Timothy Robinson is not related to the policyholders or was not living in their household; nor does it argue that the policy does not define "insured" as above stated; instead, plaintiff argues that Timothy Robinson was not an "insured" because he was paying his parents $30 a week for his lodging, meals and laundry service!

As to whether the policy covered Timothy Robinson's activities in starting the fire, Section II of the policy, entitled "Exclusions," provides as follows:

1. Coverage E—Personal liability . . . do[es] not apply to bodily injury or property damage:

    . . . .

ALLSTATE INS. CO. v. ROBINSON

[103 N.C. App. 794 (1991)]

b. arising out of business pursuits of the Insured . . . .

This exclusion does not apply to:

1. activities which are usual to non-business pursuits.

These provisions make it clear that if Timothy Robinson's actions leading to the fire arose out of a business pursuit they are not covered by the policy. In entering summary judgment the court in effect ruled as a matter of law that the materials of record show without contradiction that the actions which led to the fire arose out of a business pursuit. This was error. For the materials bearing upon the nature and purpose of Timothy Robinson's activities in starting the fire are sharply conflicting, as the following summary shows:

On the morning of 23 November 1987 a shipment of foam rubber buns for a special order that would take two days to fill was delivered to the Airway warehouse. Each bun was shaped like a giant loaf of bread, weighed approximately 200 to 250 pounds, had to be sawed into the proper proportions, and was highly flammable. One of Timothy Charles Robinson's tasks as an Airway employee was to select the buns and saw or split them into the sizes and proportions that the orders called for. He stated in his deposition that: At about 12:30 o'clock, immediately after lunch, he went to the storage room in the back of the warehouse where the buns for the special order were; the room had no window, the overhead light controlled by a switch at the other end of the building was not on and he struck two matches so that he could see to select a bun of the proper type; after selecting a bun he threw the spent matches to the floor and worked the bun out of the room to where the saw and slitter were situated, and about thirty minutes later was sawing the bun into parts when a co-worker, James Bass, saw the flames and warned him to get out of the building; the company had a no smoking policy but did not enforce it; Bass frequently smoked while working around the buns and he had seen Bass light matches in the storeroom. *Harley Shuford*, the City of Asheville's Chief Arson Investigator, stated by his affidavits that: Timothy Robinson told him that on the afternoon in question he struck some matches in the storage room, watched them burn out and threw them on the floor, and said nothing at that time about lighting the matches because the electric light in the room was not working. *James Bass* stated by his affidavit that the buns Robinson was to process were not located

**ALLSTATE INS. CO. v. ROBINSON**

[103 N.C. App. 794 (1991)]

in the storage room and that the overhead light in the storage room was on when he discovered the fire. *Ralph Showalter,* President of Airway Foam Industries, Inc., stated by his affidavit that the storage room contained only unuseable scraps, and that Robinson's work did not require him to go there that day.

The conflicts and contradictions concerning Timothy Robinson's activities and purpose in striking the matches that caused the building and its contents to be destroyed raise an issue of fact that is very material, indeed. For if, as he testified, Timothy Robinson went to the storage room to get a bun to work on and struck the matches in order to see while selecting a bun, that activity arose out of a business pursuit and plaintiff's policy did not cover it. On the other hand, if the buns that Robinson was supposed to work on were not in the storage room, as Bass and Showalter testified, and Robinson was in the room not to perform a task for his employer, but to strike matches for his own amusement, as the affidavits of the arson investigator indicate, his acts were not in pursuit of his or his employer's business and are covered by the policy. Thus, the summary judgment must be and is reversed and the case remanded to the trial court for a resolution of the factual issue stated above.

The appellants also ask that we determine whether the court erred in denying their various attempts to examine a sworn statement that Timothy Robinson made to Allstate a few days after the fire; but since other statements by Timothy Robinson and his deposition are on file and the court's action was discretionary, we decline to do so.

Reversed.

Judges ARNOLD and WELLS concur.