447 S.E.2d 255

Charles E. SMITH and Annette Smith, Plaintiffs Below,

v.

SEARS, ROEBUCK & COMPANY, Gregory Bond and Ora L. "Bud" Patton, Jr., Defendants Below.

Ora L. "Bud" PATTON, Jr., Third–Party Plaintiff Below, Appellee,

v.

NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, Third–Party Defendant Below, Appellant.

No. 21887.

Supreme Court of Appeals of West Virginia.

Submitted May 4, 1994.

Decided July 7, 1994.

Mary H. Sanders and Blake Benton, Huddleston, Bolen, Beatty Porter & Copen, Charleston, for appellant.

Vincent King, Charleston, for appellee.

PER CURIAM:

Nationwide Mutual Fire Insurance Company (hereinafter Nationwide) appeals a partial summary judgment order of the Circuit Court of Kanawha County requiring Nationwide to provide a defense to Ora "Bud" Patton in a suit brought against him by Charles E. and Annette Smith for assault and battery, intentional infliction of emotional distress and defamation. On appeal, Nationwide argues that under Mr. Patton's homeowner's insurance policy, Nationwide has no duty to provide coverage or a defense for Mr. Patton's intentional acts or business pursuits. Mr. Patton argues that because the matter presents a mixed question of fact and law, the circuit court properly reserved the matter's resolution for the jury. Because we agree that the factual questions should be resolved by a jury and not by summary judgment, we affirm the order of the circuit court.

This case is a third-party declaratory judgment action brought by Mr. Patton, the insured, against his insurance company, Nationwide, seeking to require Nationwide to defend and, if appropriate, indemnify him in *Smith v. Sears, Roebuck & Company, et al.,* (hereinafter the underlying suit). In the underlying suit, Mr. and Mrs. Smith's complaint alleges that on December 28, 1991, Mr. Smith was attacked by Mr. Patton in the parking lot outside of Sears, Roebuck & Company (hereinafter Sears). Mr. Smith alleges that he was injured when Mr. Patton struck him on the left side of his head. Mr. and Mrs. Smith allege that the assault and battery occurred after Mr. Smith and Mr. Patton, two appliance salesmen at Sears, argued about commissions earned during a traded shift. Mr. and Mrs. Smith also allege that Mr. Patton libeled and slandered Mr. Smith during Sears' investigation of the incident, which resulted in Sears' discharging Mr. Smith from his employment on January 7, 1992. In his answer, Mr. Patton alleges that: (1) Mr. Smith invited him to go outside; (2) he was merely defending himself; and (3) Mr. Smith reported the incident to Sears. Mr. Patton alleges that Sears fired both men and notes that, in the alternative, Mr. Smith

alleges that Sears fired both men as part of a nationwide practice of age discrimination.

After Nationwide refused to defend him in the underlying suit citing the insurance policy's exclusions for intentional acts and business pursuits, Mr. Patton brought a third-party complaint against Nationwide seeking to compel Nationwide to defend and, if required by the jury, indemnify him. Nationwide answered and immediately moved for summary judgment. Mr. Patton responded and cross-motioned for partial summary judgment on the duty to defend.

The circuit court noted that Mr. Patton contends "that his swing at the plaintiff was in self defense and that no bodily harm was intended" and that "there remains a question of fact as to whether the conduct complained of was a 'business pursuit,' and whether the same falls within the contractual exception to that exclusion." The circuit court then ordered Nationwide to "tender a defense until such time as the necessary facts are determined by the jury" and conditioned Nationwide's payment of damages on the factual determinations. Nationwide then appealed to this Court alleging that under Mr. Patton's homeowners policy it had no duty to provide a defense for Mr. Patton.

■ We have long held that when material facts are in controversy, summary judgment is not appropriate.

A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.

Syl. pt. 3, *Aetna Casualty and Surety Co. v. Federal Ins. Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963). *In accord* Syl. pt. 2, *Rich v. Allstate Ins. Co.,* 191 W.Va. 308, 445 S.E.2d 249 (1994); Syl. pt. 1, *Peters v. Peters,* 191 W.Va. 56, 443 S.E.2d 213 (1994); Syl. pt. 6, *Lieving v. Hadley,* 188 W.Va. 197, 423 S.E.2d 600 (1992). Summary judgment is not proper "unless the facts established show a right to judgment with such clarity as to leave no room for controversy and show affirmatively that the adverse party cannot prevail under any circumstances." *Aetna,* 148 W.Va. at 171, 133 S.E.2d at 777.

Rule 56(c) [1978], *W.Va.R.C.P.* states that a motion for summary judgment can be granted only if it is clear "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In Syl. pt. 6, *Aetna supra,* we explained that the party moving for summary judgment has the burden of proof. Syl. pt. 6, *Aetna* states:

> A party who moves for summary judgment has the burden of showing that there is no genuine issue of fact and any doubt as to the existence of such issue is resolved against the movant for such judgment.

■ In Syl. pt. 7, *National Mutual Ins. Co. v. McMahon & Sons, Inc.,* 177 W.Va. 734, 356 S.E.2d 488 (1987), we stated:

> An insurance company seeking to avoid liability through the operation of an exclusion has the burden of proving the facts necessary to the operation of that exclusion.

*See Carney v. Erie Ins. Co., Inc.,* 189 W.Va. 702, 704 n. 1, 434 S.E.2d 374, 376 n. 1 (1993).

■ In this case, Nationwide maintains that based on the insurance policy's exclusions and our holding in *Horace Mann Ins. Co. v. Leeber,* 180 W.Va. 375, 376 S.E.2d 581 (1988), it should not be required to provide a defense for Mr. Patton. In Section II–Exclusions, the Nationwide's homeowners policy provides, in pertinent part:

> 1. **Coverage E–Personal Liability, and Coverage F–Medical Payments to Others** do not apply to **bodily injury** or **property damage:**
>
> a. which is expected or intended by the **insured.**
>
> . . . . .
>
> b. arising out of **business** pursuits of an **insured** . . . .

In *Leeber,* we found that when an insurance policy contains a "so-called 'intentional injury' exclusion" "[t]here is neither a duty to defend an insured in an action for, nor a duty to pay for, damages allegedly caused by the sexual misconduct of an insured." Syl., in part, *Leeber.* In *Leeber,* Mr. Leeber, a teacher who plead guilty to two counts of sexual abuse in the third degree, alleged that under his homeowners insurance policy, the insurance company had a duty to defend him and to pay for damages arising from a civil suit brought by the parents of a victim of his sexual abuse. In *Leeber* we noted that our holding rejecting insurance coverage was consistent with our doctrine of "reasonable expectations" as defined in Syl. pt. 8 of *National Mutual Ins. Co. v. McMahon & Sons, Inc.,* 177 W.Va. 734, 356 S.E.2d 488 (1987). Sly. pt. 8, *McMahon* states:

> With respect to insurance contracts, the doctrine of reasonable expectations is that the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations.

*See Nadler v. Liberty Mut. Fire Ins. Co.,* 188 W.Va. 329, 337, 424 S.E.2d 256, 264 (1992).

In *Leeber,* we noted that "[m]ost courts deny liability insurance *coverage* for alleged sexual misconduct by applying an objective test to an intentional injury exclusion" because the sexual misconduct "is so *inherently* injurious, or 'substantially certain' to result in some injury" that "public policy precludes a claim of unintended consequences, that is, a claim that *no* harm was intended to result from the act." *Leeber,* 180 W.Va. at 379, 376 S.E.2d at 584–85. We rejected the minority approach that applied a strictly subjective approach requiring a showing of "*actual* intent. [Footnote omitted.]" *Leeber,* 180 W.Va. at 380, 376 S.E.2d at 586.

However, this case, unlike *Leeber,* does not have an admission of guilt and the parties present distinct factual scenarios. The Smiths allege that Mr. Patton attacked Mr. Smith in the parking lot outside of Sears and then intentionally libeled and slandered Mr. Smith. Mr. Patton alleges that Mr. Smith's injuries occurred when Mr. Patton tried to defend himself from Mr. Smith's attack. The determination of insurance coverage depends on the resolution of factual questions concerning what happened. Because the factual questions should be decided by a jury, we agree with the circuit court that summary judgment discharging the insurance company

is premature. *See Montgomery v. Hawkeye Sec. Ins. Co.,* 52 Mich.App. 457, 217 N.W.2d 449 (1974) (per curiam) (insurer had a duty to defend its insured in an assault and battery case because the jury or trier of fact should ultimately answer the mixed question of fact and law concerning payment); *Brown v. State Auto & Cas. Underwriters,* 293 N.W.2d 822 (Minn.1980) (summary judgment for insured was proper because there was a material issue of disputed fact regarding the intent to injure); *Gray v. Zurich Ins. Co.,* 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168 (1966) (because the potentiality of a judgment based on nonintentional conduct existed, the insurer's duty to defend was manifest at the outset); *Grinnell Mut. Reinsurance Co. v. Frierdich,* 79 Ill.App.3d 1146, 35 Ill. Dec. 418, 399 N.E.2d 252 (1979) (a complaint's allegations of intentional acts did not necessarily mean that the insured intentionally injured her).[1]

■ Nationwide also argues that coverage of the alleged acts is precluded by the policy's business pursuit exception. The circuit court found that it was a factual question if the conduct complained of was a "business pursuit" because although Mr. Smith and Mr. Patton were "co-employees, they extricated themselves from the workplace."

In *Camden Fire Ins. Ass'n v. Johnson,* 170 W.Va. 313, 316, 294 S.E.2d 116, 119 (1982) we stated that "[t]he question of whether a particular activity or course of conduct comes within this definition of 'business pursuits' must necessarily be determined on a case-by-case basis, with due consideration given to the facts and circumstances of each case." In *Camden Fire* we determined that the business pursuits exclusion did not apply to a woman who babysat as a neighborly or kindred accommodation. We also discussed the

business pursuits exclusion in *Huggins v. Tri–County Bonding Co.,* 175 W.Va. 643, 650–51, 337 S.E.2d 12, 19, (1985) and found the record on the certified question insufficient to determine if the trip to the school during which the accident occurred was to deliver a corporate contribution—a business pursuit, or was a trip for a dance with only an incidental delivery of the business check—a personal use.

Other courts have considered the business pursuits exclusion to be ambiguous. In *Myrtil v. Hartford Fire Ins. Co.,* 510 F.Supp. 1198, 1202 (E.D.Pa.1981), the district court said, "[I]ntelligent people for years have differed in their interpretation of the business pursuits clause and divergent results have been reached as a consequence. If reasonably intelligent people differ as to the meaning of a policy provision, ambiguity exists." *See North Carolina Farm Bureau Mut. v. Stox, supra* note 1 (finding the business pursuits exclusion ambiguous); *Foster v. Allstate Ins. Co.,* 637 S.W.2d 655 (Ky.App.1981) (finding business pursuits exclusion ambiguous and allowing coverage for an accident in the insured's house while she was babysitting); *Gulf Ins. Co. v. Tilley,* 280 F.Supp. 60, 64 (N.D.Ind.1967), *aff'd,* 393 F.2d 119 (7th Cir. 1968) (an exclusion to be effective "must clearly and unmistakably bring within its scope the particular act or omission").

In this case, although the initial disagreement between the parties was related to business, the conflict occurred after the parties had left their work place. The circuit court found that these circumstances presented a material question of fact as to when the business pursuits exclusion applied and reserved it for resolution by the jury. Given that Nationwide, who is "seeking to avoid liability through the operation of an exclu-

---

1. Mr. Patton urges us to require the circuit court to use a subjective approach and examine the specific intent of the insured to see if that intent resulted in this particular injury, an approach used in *North Carolina Farm Bureau Mut. Ins. Co. v. Stox,* 330 N.C. 697, 412 S.E.2d 318 (1992). In *Hensley v. Erie Ins. Co.,* 168 W.Va. 172, 178, 283 S.E.2d 227, 230 (1981) we recognized that "[m]ost courts conclude that it is against public policy to permit insurance coverage for a purposeful or intentional tort." *See Leeber, supra,*

180 W.Va. at 380, 376 S.E.2d at 586. Recently in *Municipal Mut. Ins. Co. of W.Va. v. Mangus,* 191 W.Va. 113, 443 S.E.2d 455 (1994) (discussing the intentional acts exclusion clause when an insured is mentally ill at the time he injures another) we stated, "the rational purchaser of insurance who does not plan to commit intentional torts does not want to pay premiums to provide a fund that will guard the property of those entirely devoid of self-control, regardless of the reasons for that lack of control." *Mangus,* 191 W.Va. at 116, 443 S.E.2d at 458.

sion[,] has the burden of proving the facts necessary to the operation of that exclusion," we find proper the circuit court's denial of Nationwide's motion for summary judgment. Syl. pt. 7, *National Mutual Ins. Co. v. McMahon, supra.*

For the above stated reasons, the judgment of the Circuit Court of Kanawha County is affirmed.

Affirmed.