THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TRAVIS L. POWELL, Defendant-Appellant.

Fourth District   No. 4—02—0567

Opinion filed October 29, 2003.

Frederick F. Cohn, of Chicago, for appellant.

Diane Sipich, State's Attorney, of Tuscola (Norbert J. Goetten, Robert J. Biderman, and Charles F. Mansfield, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE APPLETON delivered the opinion of the court:

After a stipulated bench trial, the trial court found defendant, Travis L. Powell, guilty of possession of marijuana with intent to deliver (720 ILCS 550/5(f) (West 2000)) and sentenced him to an agreed four-year prison term. Defendant appeals the trial court's denial of his motion to suppress, arguing (1) the traffic offense of fol-

lowing too closely (625 ILCS 5/11—710(a) (West 2000)) is unconstitutionally vague and (2) the police illegally detained him after the traffic stop was complete. We reverse.

## I. BACKGROUND

At the preliminary hearing on May 26, 2000, Sergeant Tony Cessna of the Illinois State Police testified that on April 29, 2000, at about 8:35 a.m., while patrolling Interstate 57, he pulled defendant over because he had seen him following a semitrailer too closely. Defendant gave Cessna a valid Mississippi driver's license and a rental car agreement for the vehicle. Cessna informed defendant of the offense, and defendant admitted he had followed the truck too closely. While taking defendant's information, Cessna smelled the odor of air freshener coming from inside the car.

Cessna asked defendant to come into his squad car while he wrote a warning ticket for following too closely. As defendant sat with him in the squad car, Cessna ran a criminal history and driver's license inquiry on defendant. While waiting for the results, Cessna asked defendant where he was traveling. Defendant responded that he and his passenger were coming from Chicago and traveling to Jackson and West Pointe, Mississippi. Cessna asked defendant if he had ever been arrested; defendant told him he had been arrested for possession of cannabis. When Cessna received the inquiry results, they showed defendant had several prior arrests for possession of a controlled substance as well as possession of cannabis; there was an outstanding warrant for defendant's arrest in Cook County, but it could not be executed outside of that county; and defendant's Illinois license had been revoked.

Cessna completed the warning ticket and handed it to defendant. He kept defendant's driver's license, however, and told him he was going to talk to the passenger in his car while defendant signed the warning ticket. "I handed him the warning and asked him to sign it and advised him I was going to talk to his passenger while he was doing that." Cessna then exited his squad car and returned to defendant's vehicle, where he spoke to the passenger, Candace Martin, for two to three minutes. Martin told Cessna they were on their way to Maywood, Illinois, from Chicago, to visit relatives. Cessna returned to his squad car, returned defendant's driver's license, and gave defendant a copy of the warning ticket. Cessna then told defendant that Martin stated they were traveling to a destination different from the one defendant had stated. Defendant responded that Martin knew where they were going and he could not explain her answer. Cessna asked defendant for permission to search his car, and defendant consented.

After Cessna opened the trunk and began the search, defendant asked him what would happen if defendant told him he could not search the car. Cessna told defendant he had the right to refuse, and defendant responded that he was in a hurry and "would like to get going." Considering that comment a withdrawal of consent to search, Cessna stopped searching. At that point, Cessna told defendant he was free to leave—but not with the vehicle, or at least not yet, because he had sufficient suspicion to detain it and call for a canine unit. Master Sergeant Jeffrey Gaither arrived on the scene.

While waiting approximately 24 minutes for the canine unit, Gaither spoke to Martin and saw what appeared to be cannabis on the floor of defendant's car. Gaither removed some of the material, and it field-tested positive for cannabis. Two or three minutes later, the canine unit arrived, and the dog alerted to the driver's door of defendant's car. Cessna told defendant he was going to complete his search of the car. A search of the trunk revealed a shopping bag, inside of which was a grocery bag containing seven clear Ziploc bags of green plant material. The police field-tested two of the bags, and both tested positive for cannabis. They arrested defendant for possession of cannabis (720 ILCS 550/4(f) (West 2000)) and possession with intent to deliver (720 ILCS 550/5(f) (West 2000)). At the conclusion of the testimony in the preliminary hearing, the court found probable cause.

In July 2001, defendant filed a motion to suppress his statements and the physical evidence against him, arguing that the offense of following too closely (625 ILCS 5/11—710(a) (West 2000)), for which the police had stopped him, was unconstitutionally vague. Defendant further argued that if even the offense were constitutional, the search of his car and seizure of his person were unreasonable because the traffic stop was complete before Cessna discovered any reason· for suspicion. At the hearing on the motion, Cessna's testimony was essentially the same as his earlier testimony at the preliminary hearing. He testified that defendant was traveling 20 to 30 feet, or roughly a car-and-a-half length, behind a semitrailer, a distance Cessna considered too small for defendant to come to a stop if the semitrailer stopped. According to Cessna, defendant was traveling faster than the semitrailer and had to hit the brakes to slow down. Cessna again testified that during the stop, he smelled an odor of air freshener coming from defendant's car and, in his experience, air fresheners were often used to mask the odor of narcotics.

Because of the smell of air freshener, defendant's prior criminal record, and defendant's and his passenger's conflicting accounts of their destination and what they were doing, Cessna believed some type of illegal activity was afoot. Therefore, he requested permission to search the vehicle, and defendant consented.

After finding the cannabis and arresting defendant, Cessna read him his *Miranda* rights (*Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966)). Defendant told Cessna that Martin had nothing to do with the marijuana. Defendant also claimed not to have seen the dog alert Gaither to the presence of drugs in his car. Cessna took defendant to the door that the canine had pawed, and defendant tried to wipe out the paw-marks with his foot.

On cross-examination, Cessna stated that he had five years' experience with a canine unit and had received "Valkyrie" training (training for drug-interdiction patrol). He could not recall the particular smell of the air freshener and acknowledged that air fresheners in cars are not illegal. Cessna testified that he went to talk to Martin, the passenger, because he suspected criminal activity.

On January 3, 2001, the trial court denied defendant's motion to suppress. The State dismissed the count for possession and on July 11, 2002, proceeded with a bench trial on the remaining count, with defendant's stipulation that the evidence in the preliminary hearing and in the hearing on his motion to suppress was sufficient for a finding of guilt. He expressly preserved for appeal the issues he had raised in his motion to suppress. The trial court found defendant guilty of possession of cannabis with intent to deliver (720 ILCS 550/5 (West 2000)) and sentenced him to an agreed four-year prison term, assessing fines and court costs accordingly. Defendant filed a motion for a new trial, which the trial court denied. This appeal followed.

## II. ANALYSIS

### A. Constitutionality of the Offense of Following Too Closely

Defendant argues that the traffic offense of following too closely (625 ILCS 5/11—710(a) (West 2000)) is unconstitutionally vague because it fails to provide adequate notice of the prohibited conduct as meaningful guidance to authorities enforcing its provisions.

■ A person attacking a statute's constitutionality must bring himself within the class as to whom the statute is unconstitutional by showing that he has been aggrieved by the statute. *People v. Green*, 45 Ill. App. 3d 506, 508, 359 N.E.2d 1110, 1111-12 (1977). Defendant admitted to Cessna he had been following too closely. Defendant himself could not have been aggrieved by any alleged vagueness in the statutory prohibition of "following too closely" because by admitting to following too closely, he necessarily admitted the prohibition was clear and definite enough for him (and, therefore, Cessna) to know he had violated it under the circumstances. Thus, defendant lacks standing to challenge the constitutionality of section 11—710(a). See *Green*, 45 Ill. App. 3d at 508, 359 N.E.2d at 1112. He has failed to bring

himself within the class as to whom the statute is allegedly unconstitutional. See *Green*, 45 Ill. App. 3d at 508, 359 N.E.2d at 1111-12.

## B. Denial of Motion To Suppress

Defendant next claims that the trial court erred in denying his motion to suppress. We agree.

■ On a motion to suppress evidence, the trial court first weighs the evidence and determines the facts surrounding the complained-of conduct, after which it decides whether, as a matter of law, these facts constitute an unconstitutional seizure. *People v. Cox*, 202 Ill. 2d 462, 465-66, 782 N.E.2d 275, 278 (2002). A reviewing court gives great deference to the trial court's factual findings but reviews *de novo* the trial court's ultimate decision to grant or deny the motion to suppress. *Cox*, 202 Ill. 2d at 466, 782 N.E.2d at 278.

■ Recently, the Supreme Court of Illinois held, in accordance with *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), that a police officer may conduct a brief, investigative stop of individuals, absent probable cause to arrest, provided the officer has a reasonable, articulable suspicion of criminal activity. *People v. Gonzalez*, 204 Ill. 2d 220, 227, 789 N.E.2d 260, 265 (2003), citing *Terry*, 392 U.S. at 21-22, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880. A court objectively considers whether the detention of the defendant was appropriate based on the facts available to the police officer, and the police officer must be able to articulate specific facts to justify the intrusion. *Cox*, 202 Ill. 2d at 467, 782 N.E.2d at 278. Further, a police officer's action must be reasonably related in scope to the circumstances that justified the intrusion. *Cox*, 202 Ill. 2d at 467, 782 N.E.2d at 279.

■ The *Cox* court further stated that after observing a traffic violation and initiating a stop, the officer is justified in detaining the driver to investigate the violation as well as perform some initial inquiries, check the driver's license, and conduct a speedy warrant check. *Cox*, 202 Ill. 2d at 468, 782 N.E.2d at 279. Once these tasks have been completed, the traffic stop should go no further, unless "further suspicion is aroused in the officer following these inquiries." *Cox*, 202 Ill. 2d at 468, 782 N.E.2d at 279.

In the instant case, Cessna observed defendant commit a traffic violation and initiated a traffic stop. The State argues that while investigating the violation and making permissible inquiries, Cessna's suspicions were further aroused; he became aware of specific and articulable facts, which, taken together with rational inferences therefrom, warranted defendant's continued detention and an investigation into matters unrelated to the traffic stop. Those articulable facts were as follows. Cessna testified that in his experience, air

freshener was commonly used to mask the odor of narcotics and he had arrested people in rental vehicles for narcotics violations where air fresheners were present in an attempt to mask the odor. See *United States v. Patterson*, 65 F.3d 68, 71 (7th Cir. 1995) (probable cause existed to search vehicle, partly based upon odor of air freshener). In addition, Cessna suspected criminal activity because of defendant's criminal drug history (see *United States v. Finke*, 85 F.3d 1275, 1282 (7th Cir. 1996)), the outstanding warrant for his arrest in Cook County, the revocation of his Illinois driver's license, and, more important, the inconsistent stories from defendant and Martin regarding their destination (see *Patterson*, 65 F.3d at 69; *United States v. Ferguson*, 935 F.2d 1518, 1525 (7th Cir. 1991); *United States v. Morrison*, 254 F.3d 679, 682 (7th Cir. 2001)).

■ Our supreme court has on several recent occasions considered the nature of traffic stops such as this and the extent to which they may result in probable cause for a greater intrusion. As the court in *Gonzalez* recognized:

> "A *Terry* analysis includes a dual inquiry. We must consider (1) 'whether the officer's action was justified at its inception,' and (2) 'whether it was reasonably related in scope to the circumstances which justified the interference in the first place.' " *Gonzalez*, 204 Ill. 2d at 228, 789 N.E.2d at 266, quoting *Terry*, 392 U.S. at 19-20, 20 L. Ed. 2d at 905, 88 S. Ct. at 1879.

The supreme court recently used this construct again in *People v. Bunch*, 207 Ill. 2d 7, 16 (2003), quoting *Gonzalez*, 204 Ill. 2d at 235, 789 N.E.2d at 270:

> " '[W]e must consider, as an initial matter, whether the question is related to the initial justification for the stop. If the question is reasonably related to the purpose of the stop, no fourth amendment violation occurs. If the question is not reasonably related to the purpose of the stop, we must consider whether the law enforcement officer had a reasonable, articulable suspicion that would justify the question. If the question is so justified, no fourth amendment violation occurs. In the absence of a reasonable connection to the purpose of the stop or a reasonable, articulable suspicion, we must consider whether, in light of all the circumstances and common sense, the question impermissibly prolonged the detention or changed the fundamental nature of the stop.' "

■ The conversations between defendant and the officers here occurred during a routine "wants and warrants" check. After completing that check, however, Cessna issued defendant a warning ticket for following too closely. At that point, the traffic stop was complete. See *Cox*, 202 Ill. 2d at 468, 782 N.E.2d at 279. As a consequence, the existence of reasonable, articulable suspicion is evaluated at that point in

time. See *Cox*, 202 Ill. 2d at 468, 782 N.E.2d at 279. Cessna then knew that (1) the interior of the car smelled like air freshener, (2) defendant was driving a rental car, (3) defendant had an open, in-county warrant from Cook County, (4) defendant had prior convictions for offenses involving cannabis, and (5) defendant was traveling to Mississippi.

If those items of information had justified a continued detention of defendant or a search of the vehicle, Cessna would have had no reason to converse with the passenger. He rightly judged they did not, and therefore he found it necessary to investigate further. Evidently, in Cessna's own mind, reasonable and articulable suspicion to extend the stop did not exist when he issued the warning ticket. Even assuming that defendant had to sign the warning ticket after Cessna handed it to him, defendant's signing it would have taken but a few seconds, not enough time for Cessna to exit the squad car, walk to defendant's car, and have a conversation with the passenger. The traffic stop was effectively over when Cessna handed defendant the warning. Instead of allowing defendant to leave, however, he retained defendant's driver's license, thereby indicating he was not free to leave (see *People v. Hardy*, 142 Ill. App. 3d 108, 118, 491 N.E.2d 493, 500 (1986)), and went to gather evidence from the passenger. Cessna's questioning of the passenger prolonged the traffic stop and, therefore, was not reasonably related in scope to the initial reason for the stop. See *Bunch*, 207 Ill. 2d at 17 ("questioning of defendant *** occurred *after* the purpose of the stop was concluded" (emphasis in original)).

## III. CONCLUSION

For the reasons set forth above, we reverse the trial court's denial of defendant's motion to suppress evidence and remand this cause for further proceedings not inconsistent with this order.

Reversed and remanded with directions.

COOK, J., concurs.

PRESIDING JUSTICE MYERSCOUGH, specially concurring in part and dissenting in part:

I respectfully specially concur in part and dissent in part. I would affirm on both grounds, including the trial court's denial of defendant's motion to suppress.

The majority recognizes that *Cox*, *Gonzalez*, and *Bunch* all affirmatively state that a police officer may detain a driver beyond the completion of the traffic stop if an officer has articulable suspicion. *Cox*, 202 Ill. 2d at 468, 782 N.E.2d at 279; *Gonzalez*, 204 Ill. 2d at 227,

789 N.E.2d at 265; *Bunch*, 207 Ill. 2d at 16. However, the majority finds that the officer in the instant case did not have articulable suspicion at the completion of the traffic stop, and therefore, defendant was illegally seized. I disagree.

In the instant case, Cessna observed defendant commit a traffic violation and initiated a traffic stop. While investigating the violation and making permissible inquiries, Cessna's suspicions were further aroused to the extent that Cessna became aware of specific and articulable facts that, taken together with rational inferences therefrom, warranted defendant's continued detention and investigation into matters unrelated to the traffic stop.

Cessna testified that his articulable suspicion was based upon (1) the odor of air freshener coming from defendant's rental car, (2) defendant's criminal drug history, (3) defendant's outstanding warrant for his arrest in Cook County, (4) the revocation of defendant's Illinois driver's license, and (5) the inconsistent stories from defendant and Martin regarding their destination. While any one of these factors standing alone may not be sufficient to justify defendant's detention, the court considers the totality of the facts when determining if reasonable suspicion existed. *People v. Ortiz*, 317 Ill. App. 3d 212, 223, 738 N.E.2d 1011, 1020 (2000). Based upon the totality of the facts, Cessna had reasonable suspicion based upon specific and articulable facts to detain defendant to conduct a canine test.

Even accepting *arguendo* the majority's finding that the traffic stop was complete when Cessna handed defendant the warning citation (which was before Cessna spoke to the passenger and was told of a different destination), I still find that the totality of the facts warranted Cessna's continued detention. Cessna still had articulable suspicion based on (1) the odor of air freshener coming from defendant's rental car, (2) defendant's criminal drug history, (3) defendant's outstanding warrant for his arrest in Cook County, and (4) the revocation of defendant's Illinois driver's license.

Moreover, I find the majority's assumptions regarding Cessna's belief as to when he had established articulable suspicion inappropriate. The majority states that "in Cessna's own mind," Cessna did not believe that he had reasonable and articulable suspicion to extend the stop after issuing defendant the warning citation. 343 Ill. App. 3d at 706. That was not Cessna's testimony. To the contrary, Cessna testified at the hearing on the motion to suppress that he was *already* suspicious of criminal activity when he made the decision to go talk to the passenger.

Moreover, once an officer has articulable suspicion, the investigation does not halt. Rather, the officer is justified in briefly continuing

his investigation to confirm or dispel his suspicions. Requesting a consent to search the vehicle or, as in the instant case, conversing with the passenger is part of that continuing investigation, which was based upon Cessna's already established articulable suspicion. Therefore, I would affirm the trial court on both grounds.