2004 ME 121

ACADIA INSURANCE COMPANY

v.

VERMONT MUTUAL INSURANCE COMPANY.

Supreme Judicial Court of Maine.

Submitted On Briefs: June 24, 2004.

Decided: Sept. 23, 2004.

---

Thomas S. Marjerison, Lance E. Walker, Norman, Hanson & DeTroy, L.L.C., Portland, for plaintiff.

John J. Wall, III, Monaghan Leahy, L.L.P., Portland, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

DANA, J.

[¶ 1] Acadia Insurance Company appeals from a summary judgment entered in the Superior Court (Cumberland County, *Cole, J.*) in favor of Vermont Mutual Insurance Company. Acadia contends that the court erred in concluding that an exclusion in a homeowner's insurance policy precluded coverage for property damage that the insured caused by playing with matches in the bottle room of his employer's store. We agree with the Superior Court and affirm the judgment.

## I. BACKGROUND

[¶ 2] In December of 1998 a fire destroyed part of F.T. Largay Inc.'s grocery store in Blue Hill. The fire started shortly after stock boys David Rankin and Joseph Weeks were playing with matches in the store's bottle room. It appears that Weeks flicked several lit matches across the room, while Rankin may have lit a few matches by grinding them underfoot. Weeks flicked at least one match into a cardboard box, but Rankin claims that he checked that box to ensure the match had gone out before leaving the room.

[¶ 3] At the time of the fire, the store was insured by Acadia, and Rankin was an insured under his mother's homeowner's

policy with Vermont Mutual. After a series of claims and cross-claims, the insurance companies entered into an agreement whereby they agreed to submit the following coverage questions to the Superior Court: (1) whether Acadia had a duty to indemnify Rankin pursuant to the store's policy; (2) whether Vermont Mutual had a duty to indemnify Rankin pursuant to the homeowner's policy; and (3) if both companies have a duty to indemnify, which party is obligated to provide primary coverage. Acadia subsequently filed a complaint seeking a declaratory judgment as to these questions. Vermont Mutual and Acadia then filed cross-motions for a summary judgment.

[¶ 4] The court answered the second question in the negative after it concluded that a coverage exclusion in the homeowner's policy applied because Rankin was at work when the activity took place.[1]

## II. DISCUSSION

[¶ 5] We review a grant of a summary judgment for errors of law, and we independently examine the parties' statements of facts to determine if a genuine issue of material fact exists. *White v. McTeague, Higbee, Case, Cohen, Whitney & Toker, P.A.*, 2002 ME 160, ¶ 6, 809 A.2d 622, 623. A material fact is "one having the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6,

750 A.2d 573, 575. We resolve ambiguities in insurance contracts in favor of the insured, *Merrick v. Northwestern Mut. Life Ins. Co.*, 2004 ME 66, ¶ 7, 850 A.2d 352, 354, and in particular, we construe policy exclusions "strictly against the insurer and liberally in favor of the insured." *Union Mut. Fire Ins. Co. v. Commercial Union Ins. Co.*, 521 A.2d 308, 311 (Me.1987).

[¶ 6] The Vermont Mutual homeowner's policy contains the following exclusion:

1. **Coverage E—Personal Liability and Coverage F—Medical Payments to Others** do not apply to "bodily injury" or "property damage":

. . . .

   b. Arising out of or in connection with a "business" engaged in by an "insured." This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed or implied to be provided because of the nature of the "business."

The policy defines an insured's "business" to include a "trade, profession or occupation."

[¶ 7] Although similar exclusions in other policies have generated considerable controversy, the language in the Vermont Mutual policy is very clear.[2] A Massachu-

---

1. The Superior Court's order did not address the first and third questions submitted in the complaint. Although the parties ask us to address these questions on appeal, we decline to do so.

2. Many courts have struggled to interpret the so-called "business pursuits" exclusion in homeowner's policies. *See, e.g.,* David J. Marchitelli, Annotation, *Construction and Application of "Business Pursuits" Exclusion Provision in General Liability Policy*, 35 A.L.R. 5th 375 (1996). The typical "business pursuits" exclusion, however, reinstates coverage

for "activities which are usual to non-business pursuits." 9 Lee R. Russ & Thomas F. Segulla, Couch On Insurance § 128:12 (3d ed. 1997) (quotation marks omitted). Much of the difficulty interpreting the traditional exclusion has arisen as a result of this secondary language. *See, e.g., Allstate Ins. Co. v. Robinson*, 103 N.C.App. 794, 407 S.E.2d 294, 295–96 (1991); *Economy Fire & Cas. Co. v. Second Nat'l Bank*, 91 Ill.App.3d 406, 46 Ill.Dec. 712, 414 N.E.2d 765, 766–67 (1980). The exclusion at issue in this case does not contain the second clause, and it is therefore much more straightforward. *See Metro. Prop. & Cas.*

setts court recently concluded that the identical language in a homeowner's policy precluded coverage for losses resulting from an insured's prank in the workplace. *Metro. Prop. & Cas. Ins. Co. v. Fitchburg Mut. Ins. Co.*, 58 Mass.App.Ct. 818, 793 N.E.2d 1252, 1255 (2003). In that case, the court rejected the appellant's contention that the phrase "arising out of or in connection with" is ambiguous, stating "an ambiguity is not created simply because a controversy exists between parties . . . ." *Id.* (quotation marks omitted). We agree that the exclusionary language is unambiguous.

[¶ 8] In another context, we have given the term "arising out of" a broad interpretation, stating "[a]n injury arises out of employment when, in some proximate way, it has its origin, its source, or its cause in the employment." *Hawkes v. Commercial Union Ins. Co.*, 2001 ME 8, ¶ 12, 764 A.2d 258, 264 (quotation marks omitted). The First Circuit has given the phrase a similarly expansive reading when it appeared in an insurance contract, defining "arising out of" to mean "originating from, growing out of, flowing from, incident to or having connection with." *Murdock v. Dinsmoor*, 892 F.2d 7, 8 (1st Cir.1989) (quotation marks omitted). The term "in connection with" has an even broader meaning than "arising out of," and encompasses activities linked, associated with, or related to employment. *E.g., Nationwide Mut. Fire Ins. Co. v. Nunn*, 114 N.C.App. 604, 442 S.E.2d 340, 343 (1994.) Because the Vermont Mutual exclusion is stated in the alternative, Rankin's conduct need only satisfy one of the two terms for the exclusion to apply.

[¶ 9] It is undisputed that Rankin was present at the store for purposes of his employment, and that the conduct leading to the fire occurred in the workplace.

Therefore, Rankin's losses necessarily arose out of or were in connection with his occupation.

The entry is:

Judgment affirmed.

Dissenting: RUDMAN and ALEXANDER, JJ.

RUDMAN, J., with whom ALEXANDER, J., joins, dissenting.

[¶ 10] I respectfully dissent.

[¶ 11] The Vermont Mutual homeowner's policy contains the following exclusion:

2. **Coverage E—Personal Liability and Coverage F—Medical Payments to Others** do not apply to "bodily injury" or "property damage":

. . . .

b. Arising out of or in connection with a "business" engaged in by an "insured." This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed or implied to be provided because of the nature of the "business."

Relying on an intermediate appellate court decision, *Metro. Prop. & Cas. Ins. Co. v. Fitchburg Mut. Ins. Co.*, 58 Mass.App.Ct. 818, 793 N.E.2d 1252 (2003), the Superior Court gave the term "arising out of or in connection with" an expansive reading and concluded that, even if Rankin was "screwing around" when he started the fire, the exclusion applied because the activity occurred at the workplace. The factual situation involved in this Massachusetts case can be distinguished from the factual situation in the instant case. There, the injured party, a lab assistant, and the alleged tortfeasor, a phlebotomist,

were employed at the same facility. *Id.* at 1254. The lab assistant was working at her desk when the phlebotomist arrived to deliver lab specimens for processing. *Id.* The phlebotomist walked past the lab assistant, who was engrossed in her work. *Id.* The phlebotomist poked the lab assistant to get her attention and say hello. *Id.* Startled, the lab assistant fell backwards off her chair and suffered a severe back injury. *Id.* The phlebotomist was actively engaged in a work-related activity—delivering the lab specimens for processing. Here, Acadia contends that Rankin was "flicking matches, joking and laughing, and generally 'screwing around' " with Weeks just prior to the fire starting. There is a factual issue as to exactly what Rankin was doing immediately prior to the fire. Certainly he was at his employer's place of business. Whether he was acting, as was the phlebotomist, in the course of his employment, is disputed.

[¶ 12] Several courts have recognized that a "business pursuits" exclusion in a general liability insurance policy requires a factual determination in close cases of coverage. *See, e.g., Smith v. Sears, Roebuck & Co.,* 191 W.Va. 563, 447 S.E.2d 255, 258 (1994) (affirming the denial of summary judgment because "the question of whether a particular activity ... comes within this definition of business pursuits must necessarily be determined on a case-by-case basis") (quotation marks omitted); *Allstate Ins. Co. v. Robinson,* 103 N.C.App. 794, 407 S.E.2d 294, 296 (1991) (stating that exclusion would not preclude coverage for fire damage if an employee chose to "strike matches for his own amusement"); *see also* David J. Marchitelli, Annotation, *Construction and Application of "Business Pursuits" Exclusion Provision in General Liability Policy,* 35 A.L.R. 5th 375 (1996). Some of the difficulty arises because several comparable exclusions contain different or less expansive language, but the volume of commentary that this and similar provisions have generated demonstrates that the language is, to some extent, ambiguous. *See N.C. Farm Bureau Mut. Ins. Co. v. Stox,* 330 N.C. 697, 412 S.E.2d 318, 326 (1992) ("[I]ntelligent people for years have differed in their interpretation of the business pursuits clause .... If reasonably intelligent people differ as to the meaning of a policy provision, ambiguity exists.") (quotation marks omitted).

[¶ 13] Given that we must resolve ambiguous language in favor of the insured, *Merrick v. Northwestern Mut. Life Ins. Co.,* 2004 ME 66, ¶ 7, 850 A.2d 352, 354, and that we must construe policy exclusions narrowly against the insurer, *Gross v. Green Mountain Ins. Co.,* 506 A.2d 1139, 1141 (Me.1986), we cannot interpret this exclusion so broadly that it includes any activity that takes place in the workplace. Even a phrase as inclusive as "arising out of or in connection with a business" requires some analysis of the relationship between an employee's activities and his employer's business. If Rankin was not "screwing around," and his only responsibility for the fire was in failing to put it out before leaving the room, Vermont Mutual's exclusion would unquestionably apply.

[¶ 14] In interpreting insurance contracts, like any contract, we look to the language of the contract. *See American Prot. Ins. Co. v. Acadia Ins. Co.,* 2003 ME 6, ¶¶ 12–13, 814 A.2d 989, 993–94. The Vermont Mutual policy excludes coverage for property damage arising out of or in connection with a "business" engaged in by an "insured." Policy definitions state that "[b]usiness includes trade, profession, or occupation." Although it is undisputed the property damage occurred when Rankin was at his employer's place of business, it is disputed whether the damage arises out

of or in connection with Rankin's employment as a "clerk/stock person." Although as part of her normal activities, a phlebotomist may deliver specimens to a laboratory, a clerk/stock person does not in the course of his employment play with matches.

[¶ 15] Because, however, a rational factfinder could find that Rankin's actions simply occurred at Largay's, and neither arose out of nor were connected to the store's business, the disputed facts in this case are material to the outcome of the suit and a summary judgment was improper.

[¶ 16] I would vacate the judgment of the Superior Court.