STATE OF MAINE                           SUPERIOR COURT
CUMBERLAND, ss.                          LOCATION: PORTLAND
                                         CIVIL ACTION
                                         DOCKET NO. CV-2021-148


MERRIMACK MUTUAL FIRE          )
INSURANCE COMPANY,             )
                              )
        PLAINTIFF,             )
                              )
    v.                        )          ORDER ON PLAINTIFF'S MOTION
                              )          FOR SUMMARY JUDGMENT
PHILIP CAPOLUPO, NICOLE        )
CAPOLUPO, CASCO SHORES LLC &   )
SCOTT MARDEN AND LISA          )
MARDEN IN THEIR CAPACITY AS    )
PERSONAL REPRESENTATIVES OF    )
THE ESTATE OF TROY MARDEN      )                    REC'D CUMB CLERKS OFC
                              )                     SEP 14'21 AM9:43
        DEFENDANTS,            )
                              )
                              )


Before this Court is the Plaintiff's Motion for Summary Judgement filed pursuant to M.R.

Civ. P. 56. For the following reasons, Plaintiff's Motion for Summary Judgment is hereby

GRANTED.

## FACTUAL BACKGROUND

This case comes before the Court the result of a tragic snowmobile accident resulting in

the death of a seventeen year old teenager named Troy Marden. On the evening of February

16th, 2019, Marden joined friends in driving snowmobiles across a frozen Maine lake and

eventually lost control of his—resulting in a fatal crash.

Nearly two years later, on February 10, 2021, the parents of Troy Marden—Lisa and

Scott—brought a lawsuit ("underlying complaint") in their capacity as the Personal

1

Representatives of their son's estate against the owners of the residence where Troy was staying on the night of his death. (Pl.'s S.U.M.F. ¶ 1.) The underlying complaint contends that those owners, Nicole and Philip Capolupo, negligently supervised the minors when they allowed them to drive snowmobiles across the lake. (Pl.'s S.U.M.F. ¶ 1.) In addition to negligent supervision, the complaint raises two other counts: wrongful death, and conscious pain and suffering. (Pl.'s Mot. S.J. Ex. A.)

Mr. and Mrs. Capolupo allegedly own or otherwise control the property where Troy Marden's fateful journey originated from. (Pl.'s S.U.M.F. ¶ 3.) The property is located at 21 Upper Shore Drive in Casco, Maine and is insured by the Plaintiff here, Merrimack Mutual Fire Insurance Company ("Merrimack"). (Pl.'s Mot. S.J. 1.) The insurance policy that Merrimack issued regarding the property was a "dwelling fire policy" ("Policy") which was issued to Casco Bay Shores LLC. The Policy provided both property and liability coverages to the insured. (Pl.'s Mot. S.J. 4.)

On April 22nd, 2021, Merrimack brought the instant action invoking this Court's jurisdiction under 14 M.R.S. § 5953, seeking a declaratory judgment that it is not obligated to defend the insured under the Policy because the conduct that gave rise to the underlying complaint fell within an exception to the Policy's liability provisions.[1]

After proper responses by the named defendants—the Capolupos, Casco Shores LLC, and the Mardens—Merrimack then, on June 8th, 2021, filed a Motion for Summary Judgment

---

[1] The Declaratory Judgments Act found at 14 M.R.S. §§ 5951-5963 empowers courts within their respective jurisdictions "to declare rights, status and other legal relations." The Act "provides a means for parties to have their rights, status and relations under existing written instruments judicially determined." *Hodgdon v. Campbell*, 411 A.2d 667, 669 (Me. 1980). In the instant case, Merrimack seeks a declaration of its status under the insurance contract executed between them and Casco Shores LLC.

seeking to resolve their Declaratory Judgment complaint on the record presently before this Court.

## SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment when review of the parties' statements of material facts and the record to which the statements refer, demonstrates that there is no genuine issue as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between competing versions of the fact. *Lougee Conservancy v. CityMortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774 (internal quotations omitted).

When the plaintiff is the moving party on a motion for summary judgment, the plaintiff has the burden to demonstrate that each element of its claim is established without dispute as to material fact within the summary judgment record. *North Star Capital Acquisition, LLC v. Victor*, 2009 ME 129, ¶ 8, 984 A.2d 1278.

## DISCUSSION

Merrimack claims that its duty to defend the Capolupos from the Mardens' claims against them is discharged by the language of the Policy executed between them and Casco Shores LLC. The Defendants claim that the language of the Policy is ambiguous at best.

The summary judgment record raises two issues which warrant this Court's consideration in evaluating whether to grant the Plaintiff's Motion. First, whether the accident giving rise to the Mardens' complaint occurred on an insured location, and second, whether the Plaintiffs'

pleading of a negligent supervision theory of liability successfully evades application of the Policy's motor vehicle exception to liability coverage.[2]

## I. The Policy

The Policy in question is a 'dwelling fire policy' which provides property and liability protections to the insured. Regarding liability protection, the Policy provides, in pertinent part, that

> "if a claim is made or a suit is brought against any insured for damages because of bodily injury . . . to which this coverage applies, we will pay (a) up to our limit of liability for the damages for which the insured is legally liable; and (b) provide a defense at our expense by the counsel of our choice . . . . This insurance applies only to bodily injury arising out of the ownership, maintenance and use of the insured location."

(Pl.'s Mot. S.J. Ex. B.)

The Policy then provides a number of exclusions from its liability coverage. Exclusion 1(d)(2)(a) states that no liability protection is offered to the insured where the liability "aris[es] out of the ownership, maintenance, use, loading or unloading of any motor vehicle owned or operated by or rented, or loaned to any insured." (Pl.'s Mot. S.J. Ex. B.) Definition 5(c) within the Policy then defines a motor vehicle as "a motorized golf cart, snowmobile or other motorized land vehicle owned by any insured and designed for recreational use off public roads, while off an insured location." (Pl.'s Mot. S.J. Ex. B.)

## II. Duty to Defend

Whether an insurer has a duty to defend in a particular case is a question of law. *Vigna v. Allstate Ins. Co.*, 686 A.2d 598, 599 (Me. 1996)(citing *Commercial Union Ins. Co. v. Royal Ins.*

---

[2] The Defendants also raise a third contention regarding whether the Capolupos fit the definition of the term "insured" under the policy. The Court agrees that there is a lack of record evidence sufficient to establish whether either of the Capolupos are covered under the policy. Specifically, nothing in the record connects them with Casco Shores LLC in any capacity. However, the Court need not consider this specific contention because if the Capolupos are not "insured" under the policy, then they are not covered by its liability protections. If they are, then, as discussed in more detail below, they are excluded from protection under Policy Exception 1(d).

4

*Co.*, 658 A.2d 1081, 1082 (Me. 1995)). Although the duty to defend is broad, "[a]n insurer may properly refuse to defend a policyholder if the allegations of the complaint fall entirely within a policy exclusion." *Mitchell v. Allstate Ins. Co.*, 2011 ME 133, ¶ 13, 36 A.3d 876.

To determine whether an insurer is contractually obligated to defend an insured in an underlying lawsuit, Maine courts have long employed the aptly named "comparison test," in which they compare the allegations in the underlying complaint with the terms of the applicable insurance policy to determine whether the complaint falls within the policy's coverage. *Barnie's Bar & Grill, Inc. v. United States Liab. Ins. Co.*, 2016 ME 181, ¶ 6, 152 A.3d 613. In applying the comparison test, a court examines the underlying complaint for *any potential factual or legal basis* that may obligate the insurer to defend the insured, even the mere intent to state a claim within the insurance coverage. *Lavoie v. Dorchester Mut. Fire Ins. Co.*, 560 A.2d 570, 571 (Me. 1989) (internal quotations omitted) (emphasis added). The underlying complaint is afforded a broad construction in favor of the insured while policy exclusions and the existence of any ambiguities are strictly construed against the insurer. *Id.* at ¶ 1.

III. **Did the Accident Occur on an Insured Location?**

The first issue the record raises for this Court to consider is whether the accident involving the snowmobile occurred on an insured location. This dispute centers on the definition of a motor vehicle stated in the Policy. Definition 5(d) defines a motor vehicle as "a motorized golf cart, snowmobile or other motorized land vehicle owned by any insured and designed for recreational use off public roads, while off an insured location."

The Plaintiff contends that the snowmobile being operated by Troy Marden on the night of the accident was being operated "off an insured location." If true, then the snowmobile is a

motor vehicle according to the Policy and allows the conduct alleged in the underlying complaint to fall within the bounds of the Policy's motor vehicle exclusion.

To determine whether the record generates a genuine dispute on this issue, the Court begins with the language of the Policy. Definition 4(a) of the Policy states that an "insured location" means "(a) the 'residence premises' including the ways immediately adjoining on land; and (b) a building intended for occupancy by 1 to 4 families for residential purposes including the ways immediately adjoining on land."

Next, the Court must compare the language of the Policy to the underlying complaint. The underlying complaint states that a group of minors, including Troy, were using snowmobiles on a "frozen lake" to access an offshore island when the snowmobile Troy Marden was operating crashed. (Pl.'s Mot. S.J. Ex. A ¶¶ 15-16.)

Thus, the operative issue is whether the complaint's allegations which state that the snowmobile accident occurred on a "frozen lake" are sufficient to meet the Policy's definition of an insured location.

After a review of the summary judgment record, the Court finds that the complaint, when compared with the definition of "insured location" in the Policy, presents no genuine issue as to whether the snowmobile was "off an insured location" when the accident occurred. It was.

The parties do not dispute that the snowmobile accident occurred on a "frozen lake," and the record does not generate an issue as to whether a lake is a "residential premise". It is not. A premise is defined by Black's Law Dictionary as "a house or building along with its grounds." *Premise*, Black's Law Dictionary (10th ed. 2014.) *See also Arrowood Indem. Co. v. King*, 39 A.3d 712 (Conn. 2012) (adopting a narrow definition of the term premise to mean the residence

6

and its immediately adjoining roadways). Similarly, no issue is generated as to whether a frozen lake can be considered a "way immediately adjoining on land," it cannot.

Because the record generates no issue as to whether the snowmobile Troy Marden was riding at the time of the accident was "off an insured location" the Defendants cannot survive the Plaintiff's Summary Judgment Motion on this issue.

## IV. **Does a Negligent Supervision Theory of Liability Evade the Motor Vehicle Exclusion?**

Having determined that the record presents no genuine issue as to whether the snowmobile meets the Policy's definition of a motor vehicle, the Court next considers whether the pleading of a negligent supervision theory of liability renders the exclusion inapplicable here.

In their response to the Plaintiff's Summary Judgment Motion, the Capolupos allege that the Policy's motor vehicle exception cannot apply because the alleged negligent supervision by the Capolupos is "non-auto related conduct" making it "fall outside the bounds of the motor vehicle exclusion." (Def. Capolupo's Resp. Pl.'s Mot. S.J. 7.) The Court disagrees.

After a thorough review of the summary judgment record and the relevant law cited by both parties, there is no genuine issue generated as to whether Mardens' pleading of a negligent supervision theory of liability in the underlying complaint operates to evade the enumerated motor vehicle exception to liability coverage. It does not.

In *American Universal Ins. Co. v. Cummings*, the Law Court spoke directly on whether the pleading of a specific liability theory operates as an evasion of an motor vehicle exclusion to liability coverage within an insurance policy. 475 A.2d 1136 (Me. 1983). In this case, the lower court, based on an exception identical to the one at bar, had imposed a duty to defend on the insurer based on the plaintiff's pleading of "failure of supervision" and "negligent entrustment" *Id.* In vacating that decision, the Law Court saw no reason to conduct "any detailed analysis of

the problem" as "theories of liability" are "inherent in a claim" and what was specifically excluded by the policy was *all claims. Id.*

Here, the Policy specifically provides that Liability coverage does not apply to "*a claim . . . brought against any insured for damages because of bodily injury arising out of the . . . use . . . of any motor vehicle. . . "* (emphasis added). Inherent in the phrase "a claim" is the theory of liability which advances the merits of such a claim—including a theory of negligent supervision. As such, regardless of the theory of liability, the record supports application of the exclusion here.

Moreover, the fact that the Mardens' claims *arise out of* the use of a motor vehicle—as defined by the Policy—also prevents the evasion of the liability exclusion at issue. When the claim at bar "arose out of" the subject matter of the exclusion, Maine courts have held the specific theory of liability advanced to be irrelevant.

In *Acadia Ins. Co. v. Vt. Mut. Ins. Co.*, the Law Court addressed the broad reading that the phrase "arising out of" receives in liability coverage agreements. 2004 ME 121, ¶ 8, 860 A.2d 390. There, in the workers compensation context, the Court said that "an injury *arises out of* employment when, in some proximate way, it has its origin, its source or its cause in the employment." *Id.* (emphasis added). The First Circuit has similarly interpreted the phrase "arising out of" broadly, defining it to mean "originating from, growing out of, flowing from, incident to or having connection with." *Id. Murdock v. Dinsmoor*, 892 F.2d 7, 8 (1st Cir. 1989).

In *Liberty Mut. Ins. Co. v. Cole*, the plaintiffs brought a complaint which alleged damages from the sexual molestation of their child by the child of the insured. 2009 Me. Super. LEXIS 123 at **4-5 (June 16, 2009). The insurance policy there excluded claims for serious bodily injury that "arose out of" instances of sexual molestation from their liability coverage. *Id.*

8

at n.2. Attempting to evade the exclusion, the underlying complaint alleged negligent supervision on the part of the insured. *Id* at \*5. Relying on *Acadia Ins. Co.*'s broad reading of the phrase "arising out of," the court ruled that the theory of liability underlying the complaint did not matter because, but for the molestation, the claim would have never come before the court. *Id.* The claim thus, "arose out of ," an incident of sexual molestation, fitting it squarely within the policy's liability coverage exception regardless of the theory of liability advanced. *Id. See also Tortensen v. Penn-American Ins. Co.*, 1999 Me. Super. LEXIS 123 (Apr. 24, 1999) (holding that, but for the occurrence of an assault, the instant claim would have never been brought, fitting it squarely within the policy's assault/battery exception); *Dragomir v. Medical Mut. Ins. Co.*, 2012 Me. Super. LEXIS 110 (Aug. 27, 2012) (holding that a sexual relationship between a social worker and a client which "arose out of " the rendering of professional services fit it squarely within the subject policy's professional services exception).

Turning to the case at bar, the record fails to generate any issue as to why the same analysis is not dispositive here. Although the Plaintiffs cite a number of cases supporting their position, those cases hail from other jurisdictions and fail to persuade this court that it should not follow the reasoning of other Maine courts who have decided this issue. The Policy here unambiguously provides that liability coverage is not available to the insured for bodily injury that "*aris[es] out of* the ownership, maintenance, use, loading or unloading of any motor vehicle owned or operated by or rented, or loaned to any insured." Regardless of the theory of liability that the Mardens' advance, their claims here still arose out of an accident involving a motor vehicle. Thus, the claims fit within the policy's motor vehicle exception.

## CONCLUSION

There is no genuine issue of material fact presented which would preclude Merrimack from discharging its duty to defend the Capolupos on the underlying complaint. The Summary Judgment Record generates no issue as to Merrimack's contention that the snowmobile accident which gave rise to the underlying complaint fits squarely within the Exception 1(d) of the Policy. Accordingly, summary judgment is GRANTED in favor of the Plaintiff.

**Entry is:**

Plaintiff's Motion for Summary Judgment is GRANTED

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: September 14, 2021

John O'Neil Jr.
Justice, Superior Court